HAMITER, Justice.
 

 Douglas P. Stevens instituted this suit seeking a solidary judgment against Dominic A. Regan and Eugene A. Nolan, as well as against their respective public liability insurers (hereinafter named), for personal
 
 *1009
 
 injury damages allegedly sustained by
 
 him
 
 as the result of an intersectional collision between an automobile driven by Regan (in which plaintiff was a guest passenger) and another operated by Nolan.
 

 After trial, the district court awarded damages to plaintiff in the amount of $27,-•011.44 and condemned the defendants in solido therefor.
 

 From the judgment all defendants appealed. Plaintiff answered, seeking an increase in the award.
 

 The Court of Appeal, on the original hearing, reduced the damages to $24,011.44 and dismissed plaintiff’s demands as against Regan and his insurer, the Liberty Mutual Insurance Company. It found that Nolan was guilty of negligence that was the sole proximate cause of the accident. Consequently, judgment was rendered against only Nolan .and his insurers, the Royal Indemnity Company (the insurer of the car Nolan was •driving, but which did not belong to him) and the American Automobile Insurance Company (the insurer of Nolan’s personal automobile which was not involved in the collision).
 

 Plaintiff applied for a rehearing, praying merely that the damage award be increased. Nolan and his insurers also sought another hearing, urging that he was guilty of no negligence and that the judgment against them should be annulled. Alternatively, those defendants pleaded that there should be judgment in solido against them, Regan and his insurer, as decreed by the district court.
 

 The Court of Appeal (with its entire membership participating) “expressly granted unlimited rehearing as it was our intention, aim, desire and purpose to bring the entire matter again before us for reappraisal”. On the same day counsel for all parties were notified of that ruling.
 

 When the case came on for argument on the rehearing Regan and his insurer (through their counsel) contended that, inasmuch as plaintiff failed to apply for a rehearing on the portion of the judgment which dismissed the suit as against them, the decree in their favor “is final and not reviewable by this or any other Court”; and that the application of Nolan and his insurers could not have the effect of keeping them in the litigation, there having existed
 
 no
 
 independent rights as between the alleged co-tort-feasors.
 

 The Court of Appeal rejected such contention and, after reconsideration of the evidence, changed its original judgment, this time condemning Regan and his insurer for all damages ($24,011.44) and dismissing plaintiff’s suit as against Nolan and his insurers. See 133 So.2d 1, 6.
 

 We granted certiorari herein primarily because of the complaint made in the petition therefor of Regan and his insurer respecting the ruling of the Court of Appeal
 
 *1011
 
 on the above mentioned procedural issue, i. e., whether the ordering of a rehearing as to them was proper and legal in view of plaintiff’s failure to apply for it from that portion of the judgment rendered in their favor. Certiorari was issued also on plaintiff’s petition (complaint was made therein of the dismissal of the suit as against Nolan and his insurers and of the reduction in the district court’s award) so that we might have the entire case before us.
 

 Addressing ourselves first to the above stated paramount procedural issue, our further study of the cause has led us to conclude that the Court of Appeal’s granting of an unlimited rehearing as to all parties litigant was proper and legal. While we seriously doubt that plaintiff’s application was sufficient to permit such action, inasmuch as therein no error was alleged as to the court’s ruling respecting the matter of liability, we are satisfied that the application timely filed by Nolan and his insurers sufficed therefor.
 

 In their briefs to this court counsel for Regan and his insurers argue: “ * * * Nolan and his insurers had no legal right to seek any relief whatever against Regan and his insurer; therefore, the language in Nolan’s application for rehearing asking that Regan and Liberty Mutual be held in solido with Nolan and his insurers was of no legal effect whatever.” And in support of the argument certain cases are cited.
 

 Clearly the cited decisions are not decisive of the instant issue. They stand generally for the principle that where two persons are sued as solidary obligors and the plaintiff takes no appeal from the judgment of the district court dismissing the suit as to one defendant while condemning the other an appeal by the latter has no effect on the former defendant and, hence, does not bring him before the appellate court. But that situation does not exist here.
 

 The district court’s judgment in this cause, to the contrai-y, decreed solidary liability as to all defendants, and all of them appealed to the Court of Appeal. As a consequence all parties litigant were properly before such court. And it follows that when that tribunal, on the original hearing, held Nolan and his insurers to be solely liable for the damages sought herein certainly they had an interest in seeking to have reinstated the judgment of the district court decreeing Regan and his insurer liable solidarily with them (so that ultimately they could demand and obtain contribution) despite the fact that plaintiff did not apply for a rehearing respecting the issue of liability. This being true such interest was properly asserted by way of their filing the application for a rehearing, the result of which was that finality of the judgment as to Regan and his insurer was prevented.
 

 Other cases relied on here by counsel for Regan and his insurer would perhaps be' pertinent if only plaintiff’s limited applica
 
 *1013
 
 tion for a rehearing were involved. But such cases are not appropriate in view of the application of Nolan and his insurers in which, as aforeshown, they alternatively sought to have reinstated the district court’s judgment decreeing solidarity of the obligation as to all defendants.
 

 Had it not been for the above discussed and determined procedural matter in all probability no writ of review would have issued herein since the merits of the controversy, which we now consider, involve mainly questions of fact. Nevertheless, as before stated, the entire cause is presently before us.
 

 A detailed account of the circumstances surrounding the accident is contained in the published opinions of the Court of Appeal, and no useful purpose would be served by our recounting all of them. We shall relate only those deemed necessary for this consideration.
 

 The collision occurred in the City of Baton Rouge during clear weather about 11:00 a. m. o’clock of May 28, 1958 at the intersection of Convention and North 16th Streets. Convention, approximately twenty-eight feet wide and coursing in an east-west direction, is the favored street, it having a legal speed limit of thirty miles per hour and there being a stop sign facing traffic on 16th Street as it approaches from the north. Nolan was proceeding east on Convention and Regan was driving south on 16th.
 

 Regan brought his vehicle to a halt at or near the mentioned stop sign on 16th and thereafter attempted to cross Convention. But before he completed his crossing the right rear portion of his automobile was struck by the right front of Nolan’s car. The point of impact was approximately ten feet north of the south line of Convention and four feet east of the west line of 16th.
 

 Regan stated that while stopped he noticed the Nolan vehicle at a railroad crossing some 320 feet west of the intersection and assumed that he had time to proceed safely. However, his testimony and a prior written statement given by him are conflicting as to whether he continued to observe the Nolan car when and after deciding to move forward and as to whether he found it necessary to (and did) speed up in attempting the crossing.
 

 Nolan, on the other hand, testified that he stopped his automobile at the railroad crossing (referred to by Regan) and then continued his journey on Convention Street at the legal speed of approximately thirty miles per hour. He said that he first saw the Regan car as it was moving into the intersection; and that immediately upon noticing it he applied his brakes, swerved to the left, and unsuccessfully attempted to pass to its rear. Further, he said that Regan’s entering the intersection came at such a time with respect to his own approach thereto as to make it impossible for him (Nolan) to avoid the collision.
 

 
 *1015
 
 On its original hearing the Court of Appeal, when disregarding Nolan’s testimony and in finding that he was traveling at an excessive rate of speed which proximately caused the accident, relied almost exclusively on the expert opinions of one Alvin Doyle, Jr., an accident analyst whose services were enlisted by the attorneys for Regan and his insurer. An influencing conclusion of that witness, based on facts furnished by police reports and on certain tests made by him at the scene of the collision some five months after the date of its occurrence, was that Nolan was driving more than forty miles per hour and was approximately sixty-nine feet from the intersection when he became aware of the impending collision and applied his brakes.
 

 In changing its finding and judgment, however, the Court of Appeal on the rehearing stated: “Doyle’s testimony * * * is based upon what we now realize and recognize to be certain incorrect assumptions and, in addition, ignores certain variable factors which we believe affect the accuracy of his conclusion.” It then proceeded to point out the mentioned “certain variable factors” ignored, some of which were differences between the weight of Nolan’s car and that of the test vehicle, between the tires of the respective automobiles, and between road conditions as of the date of the collision and some five months later when the tests were made.
 

 Our consideration of Doyle’s testimony, along with that of Dr. Lloyd W. Morris, an expert who testified on behalf of Nolan and who had concluded from tests made that he (Nolan) was not traveling more than thirty miles per hour, leads us to agree that the Court of Appeal fell into error when (on the original hearing) it placed so much emphasis and weight on Doyle’s opinion as to Nolan’s speed. Further, we note (after our study of the entire record) that, except for Doyle’s opinions, there was not a scintilla of testimony offered in proof of excessive speed on Nolan’s part. Regan himself could not so testify; in fact, his statements, taken as a whole, seem to negative it. Noted also, and of particular importance we think, is the positive testimony of the two investigating police officers that when they arrived at the scene shortly after the accident there appeared to be no evidence whatever of excessive speed on the part of either driver.
 

 Much emphasis has been placed by plaintiff, Regan and his insurer on the fact that the repair cost for each vehicle ($611.-03 for the Regan car and $707.67 for the Nolan automobile) is, of itself, evidence of excessive speed by Nolan. But we cannot accept such a conclusion on that fact alone, particularly since the two investigating police officers could not so conclude after having observed (shortly following the accident) the damaged cars, as well as the skid and slide marks left by them and their re
 
 *1017
 
 spective positions on being stopped. Incidentally, it is common knowledge that by reason of today’s increased wages — particularly in the skilled labor field — some damages to an automobile caused by a relatively minor impact can be extremely costly to repair.
 

 In our opinion this cause is one to which there is applicable the well settled principle that a motorist on a superior thoroughfare has the right to assume that another motorist approaching it on a less favored intersecting street will observe the law and yield the right of way to the former. And our appreciation of the evidence accords with that of the Court of Appeal (on the rehearing) which was as follows: “ * * * the accident in the case at bar resulted solely from the negligence of defendant Regan in either failing to observe the approach of the Nolan vehicle or if aware thereof, proceeding into the intersection at a time when Nolan was so near it was unwise, unsafe and dangerous for Regan to attempt to cross. We believe the accident occurred substantially as related by Regan in the statement given June 2, 1958, and reaffirmed upon his cross-examination during trial wherein he stated that after looking toward the track he did not look again until his attention was attracted to Nolan’s vehicle by the noise of the latter’s brakes. At this time Nolan (according to Regan) was only 40 to 50 feet distant and Regan then realizing the danger accelerated his vehicle in an attempt to avoid the impending collision.
 

 “We further believe that upon detecting Regan proceeding into the intersection Nolan immediately applied his brakes and did everything possible to avoid the accident but could not do so.”
 

 Furthermore, we have examined the evidence pertaining to the amount of damages recoverable by plaintiff, and we are satisfied that the award of the Court of Appeal is neither excessive nor inadequate.
 

 For the reasons assigned the writs heretofore issued are recalled and the judgment of the Court of Appeal rendered on rehearing is affirmed. Defendants Dominic A. Regan and Liberty Mutual Insurance Company shall pay all costs.
 

 Rehearing denied; HAWTHORNE and SUMMERS, JJ., are of the opinion that a rehearing should be granted.