REID, Judge.
This action was brought by Bennie L. Wright, duly appointed guardian of Mrs. Janette Letney, against General Motors Corporation for damages totaling $770,-000.00. The petition alleges that on or about December 23, 1959, about 8 :00 P.M., the said Mrs. Janette Letney and her two minor children, David Letney and Sandra Letney, were riding as guest passengers in the 1959 Buick Sedan automobile being driven at the time by her husband James C. Letney; that while traveling in a westerly direction on U. S. Highway 90 in the town of Bayou Vista, Louisiana, the said James C. Letney applied his brakes to slow the vehicle down and the said vehicle suddenly veered to the left in the opposite traffic-lane directly into the path of an automobile,, causing the instant death of James C. Letney and the minor child David Letney and fatal injuries to the minor Sandra Letney who-died the next day, and causing serious and permanent injuries to the said Mrs. Janette Letney; that the said Mrs. Janette Letney, 26 years of age, received injuries consisting of shock, an injury to her entire nervous system, bruises, contusions and lacerations, over entire body, a crushing injury to the-head, a concussion and injury to her brain, all of which caused said Mrs. Janette Letney-to be unconscious for many months and resulted in permanent brain damage. The petition further alleges that the accident, was caused by a defective brake system in, the Buick Sedan operated by James C. Letney, particularly a defective cylinder,, allowing brake fluid to leak down the brake backing plate and onto the brake drum. Plaintiff amended his petition alleging the said Buick automobile was purchased by-James C. Letney from the Segura Buick: Company, Inc., of New Iberia, Louisiana, and that the said Segura Buick Company, Inc., warranted said vehicle to James C. Letney to be free from defects, and prayed: said Segura Buick Company, Inc. be made a party defendant.
General Motors Corporation filed an answer of general denial and alleged contributory negligence on the part of James C. Letney and Mrs. Janette Letney. Segura Buick Company, Inc., filed an answer of general denial and also alleged contributory negligence on the part of James C. Letney and Mrs. Janette Letney, and assuming the-position of plaintiff in third party proceedings against General Motors Corporation, prayed for judgment against General' Motors Corporation for any sums which-might be adjudged against Segura Buick Company, Inc., in favor of original plaintiff, to which third party petition General Motors-filed answer alleging- contributory negligence on the part of Segura Buick Company, Inc.
*311 Plaintiff’s original petition was again amended to make New Amsterdam Casualty Company, insurer of Segura Buick Company, Inc., a party defendant.
Halliburton Company filed a petition of intervention alleging the plaintiff herein had filed a suit for workmen’s compensation against intervenor, but subsequently moved that its petition of intervention be dismissed for the reason the suit against it had been dismissed.
General Motors Corporation, Segura Buick Company, Inc., and New Amsterdam Casualty Company filed peremptory exceptions of privity of contract and prescription. However, no argument as to said exceptions has been made before this Court and they must be considered as abandoned.
This action was consolidated for trial on the docket of this Court entitled Gautreaux v. General Motors Corporation, La.App., 158 So.2d 316.
The cases were tried before a jury which returned a verdict for the defendants General Motors Corporation, Segura Buick Co., Inc., and New Amsterdam Casualty Co., and judgment in this matter was ren•dered and signed accordingly on June 27, 1962, dismissing plaintiff’s suit at his cost. It is from that judgment a devolutive appeal to this Court has been taken.
The plaintiff alleges three specifications of error: (1) The Trial Judge erred ■in giving certain instructions to the jury which were calculated to mislead them, (2) the verdict of the jury and the judgment •thereon were not in accordance with the facts established at the trial and the applicable law, and (3) it was error not to .award damages in view of the liability as •established by the facts.
The two charges objected to read as follows :
“29. If you find that it has been proved by a preponderance of the evidence that exposure to the elements, or ;the lifting of the Buick automobile by the wrecker that brought the Buick to Frank’s Motor Company, or removal of parts from said vehicle while at Frank’s Motor Company, caused any injury to the brake cylinder of the Buick, or might have caused the appearance of injury to said brake cylinder, then you should disregard any testimony that would tend to establish responsibility herein against the defendants in these cases.”
“30. If you find from a preponderance of the evidence that the Buick automobile was lifted by a number of bystanders in order to remove the Letney girl from under the car, and that the Buick was thrown to one side subsequent to the occurrence of the collision, and that this lifting of the car could have caused brake fluid to leak over the right front brake cylinder so that it might appear that this cylinder was leaking — was leaking fluid, then it was not the cause of the accident, and you should find in favor of the defendants.”
It is the plaintiff’s contention that under the two instructions, regardless of the facts, the jury was compelled to return a verdict in favor of the defendants, even though the evidence under the other instructions justified a verdict in favor of the plaintiff and these instructions did not take into consideration the proximate cause and are grossly objectionable. An examination of the record, however, discloses the learned Trial Judge gave 68 charges to the jury which, in this Court’s opinion, covered most ably all aspects of the case. In instruction number I the Trial Judge most specifically informed the members of the jury they were not to single out one instruction alone as stating the law, but must consider the instructions as a whole. In addition, in charges numbered 8 and 10 the Trial Judge instructed the jury with regard to the question of proximate causes. It is the opinion of this Court when all of the instructions are considered together, rather than taking one or two out of context, the charges *312 objected to by the plaintiff were in no manner prejudicial.
The central issues in this case are whether or not the accident was caused by defendant General Motors Corporation having manufactured a defective brake cylinder and whether or not the automobile dealer, Segura Buick Company, Inc., properly inspected the vehicle to ascertain whether or not the brake cylinder was defective prior to selling the vehicle to James C. Letney.
The facts surrounding the manufacture and purchase of the vehicle are as follows: The Letney Buick, a 1959 LeSaber, was purchased by James C. Letney as a new car on September 11, 1959, from defendant Segura Buick Company, Inc., in New Iberia, Louisiana. The Buick had been manufactured by General Motors Corporation at its plant in Arlington, Texas. The wheel cylinder in question had been manufactured by Delco-Moraine Division of General Motors in Dayton, Ohio. The Buick was delivered to defendant Segura Buick Company, Inc., by an independent transport company. The car was inspected and kept in storage or on the demonstration floor until sold to the said James C. Letney. The car was returned for a thousand mile check and at the time of the accident had approximately 4,867 miles registered on the autometer.
This case was tried before a civil jury which heard testimony and argument of counsel for eight days. In addition, two and one-half days were consumed in selecting a jury. The testimony is voluminous, covering 1431 pages.
The record shows the Letney Buick automobile was traveling west and struck a Chevrolet automobile operated by Edric Gautreaux which was traveling east. According to Lt. T. S. Gianfala of Louisiana State Police, the point of impact was on the left front of the east bound Chevrolet and on the right side of the west bound Buick. He established the point of collision as approximately 3 or 4 feet inside the Chevrolet’s lane of traffic. Lt. Gianfala and two other State Troopers testified there were approximately 70 feet of skid marks and all testified the left hand skid mark appeared darker than the right side mark. Trooper Clarence C. Butcher testified where the skid marks crossed the center line they made a 40 degree angle with the center line. The physical damage to both vehicles was extensive and the physical evidence indicates there was a tremendous impact. Mr. Jules M. Hebert Sr., and his wife were following the Gautreaux vehicle. He testified a car coming from the east all at once turned into the Gautreaux lane. This fact was corroborated by the testimony of his wife.
As Mr. and Mrs. Hebert were apparently the only eye witnesses, and they had no actual knowledge as to what caused the accident, and as all of the parties in both vehicles were killed, with the exception of Mrs. Letney who suffered permanent brain damage and cannot testify as to the fact of the case, there is no direct testimony whatsoever as to the cause of the accident. Plaintiff, therefore, had to rely upon an examination of the physical facts at the scene of the accident and the testimony of expert witnesses testifying as to their findings as to the condition of the brake cylinder after the accident, in order to prove his case.
As to the physical facts at the scene of the accident, as testified by expert witnesses, the record only discloses there were skid marks of varying degrees made by the Letney vehicle; there was some evidence that the left hand skid mark was darker than the right hand skid mark; the Letney vehicle swerved into the opposite lane of traffic; and the impact was immense. It is, therefore, clear the plaintiff had to rely upon expert testimony and attempt to correlate such testimony with the physical facts to show the accident could have been caused by a defective brake system.
Both plaintiff and defendants introduced a great deal of expert testimony which was both lengthy and very technical, and for the most part diametrically opposed.
*313 Plaintiff relied heavily upon testimony of Alvin C. Doyle, an automotive consultant from Baton Rouge, Louisiana, who examined the vehicle in question on March 2, 1960, some 70 days after the accident.
Mr. Doyle testified he took the left and right front wheel suspension assemblies from the Letney vehicle and carried them to Baton Rouge where he made an examination of those particular parts in his own office. He further testified he removed the right front hub and brake drum from the suspension and found there was brake fluid on the braking surface of the brake drum and on the brake lining. He found there was a trail leading down from the primary or front end of the master cylinder that led right down the inside part of the right front wheel brake and plate assembly, and that a quantity of brake fluid between the piston and the boot of the wheel cylinder indicated a leak in the primary end, all of which, he stated, indicated a defective wheel cylinder.
Mr. Doyle testified he conducted two tests to determine whether or not the wheel cylinder was defective. The first test consisted of placing the wheel cylinder together with the brake shoes on another 1959 Buick automobile and he found upon hard application of the brakes the car would pull to the left and pull hard. Mr. Doyle explained the pulling to the left as follows:
“The reason was is because there was brake fluid on the brake drum and the brake lining that was acting as a lubricant between the two surfaces. The brake shoe is a frictional type of material made to dissipate the motion of the automobile or the movement of the automobile through frictional heat and dissipate it into the air in order to stop the vehicle. When brake fluid or any oil substance is on the linings and on the brake drum, it acts as an oil is supposed to do. It lubricates. It reduces the friction. Consequently the affected wheel with brake fluid on it will have less frictional stopping ability to it than the dry normal brake would have. In this case it was the right front wheel with brake fluid on it, the left front wheel was normal and dry.”
Mr. Doyle also stated after the first driving test he disassembled the wheel cylinder and found a built-up deposit inside the barrel of the cylinder and these deposits were in the vicinity of the area that the seals inside the cylinder would pass during a normal operation of the piston mechanism and could affect and interrupt the seal of the lip of the little rubber cup against the barrel of the cylinder, and concluded that any time the seal is affected the result could be a leak. Mr. Doyle concluded his testimony on direct examination as follows:
“Q: And would the facts as you found them, the condition of the braking mechanism on that right wheel, when you examined it, after you had tested it, would it cause the Buick automobile, in laying down skid marks to the extent of seventy feet, taking an angle to the left to at least forty-five degrees, would that cause that car to act in that manner, the condition of the right wheel on this Letney automobile?
“A. It did on two vehicles that I have tested.
“Q: Well, in your opinion, did it cause the automobile, the Letney automobile, to act in that manner at the time of this accident ?
“A: Yes.”
Mr. Doyle testified that when he ran his second test he secured a 1959 Buick and through the use of a hypodermic syringe injected one ounce of brake fluid through the brake adjustment slot into the right front wheel and after driving the vehicle less than a block the vehicle “pulled violently to the left” when the brakes were applied.
The plaintiff also produced as a witness a Mr. Louis Margot of Baton Rouge, who operates a brake specialist shop and who testified that he was with Mr. Doyle when *314 he performed the second test and the car “swerved to the left in a severe way.” He further testified that a saturation of a brake lining- with brake fluid makes it turn a darker color and the right front wheel linings of the Letney vehicle had a darker color and corroborated Mr. Doyle’s testimony that deposits or corrosion in the wall of the wheel cylinder would tend to disrupt the seal and cause the fluid to leak out.
Plaintiff based his case upon the testimony of Mr. Doyle as to the results of the tests, which testimony was corroborated by the testimony of Mr. Louis Margot.
Defendants used expert testimony to prove the wheel cylinder was not defective and prior to the accident the brake cylinders did not leak, but on the contrary were working satisfactorily. Defendants further contend Mr. Doyle’s tests were inconclusive and improper as Mr. Doyle’s whole theory of the case was based upon an assumption that the wheel cylinder was defective and attempted to fit the facts to that assumption.
With regard to the manufacture and servicing of the Buick Mr. Edward F. Frey, Chief of Quality Control at General Motors’ Arlington Plant at the time of the assembly of the Letney Buick, testified as to the tests made on the brakes and brake system of all new vehicles. He stated an automobile could not get off the assembly line with a leaking brake cylinder.
The record shows after the car left General Motors’ control, it was delivered to Segura Buick at New Iberia where it was inspected and a new car “make ready” was performed and again no defect was found. The car was given a thousand mile check by Mr. Edward C. Andre, a qualified mechanic, who testified he placed the car on a rack, checked under the car, tested the brakes, conducted a road test, and found no pulling to either side. He checked under the car to see whether any oil was leaking and saw no evidence of oil leaking from the brake drums.
The testimony shows Mrs. Letney returned the car because of vibrations. Flat spots were discovered on all four tires, apparently resulting from a panic stop made by Mr. Letney on a prior occasion. The service manager drove the vehicle, checked the under carriage, checked the brakes, and found nothing wrong with the car except the vibrations. The tires were crossed and the mechanic who performed the work did not see any brake fluid, oil, or any substance in the area of the right front wheel assembly. Defendants also introduced evidence-showing the tires on the Letney vehicle were changed on December 16, 1959, by Lucian J. Cutrera, operator of a Texaco Service Station, just seven days prior to the accident. Mr. Cutrera, in answer to a question propounded by a juror, testified he saw no brake fluid dripping anywhere nor any evidence of brake fluid on either of the two front wheels.
Mr. Dick, who testified he drove the car on the afternoon of December 23, testified when he applied the brakes, not being accustomed to power brakes, the brakes threw him forward because he stepped on them too’ hard, but nowhere did he testify the brakes worked improperly or pulled to the left. Mr. William Aschton, brother-in-law of Mr. Dick, who was riding in the Letney vehicle as a guest passenger during the afternoon while Mr. Dick was driving, testified other than his brother-in-law pressing too hard on the brakes the first time he used them, the brakes operated normally and the car stopped just as any car properly operated.
Defendants produced several expert witnesses who testified in regard to the condition of the brake cylinder. Mr. Francis J. Markey, a Staff Engineer with Delco-Moraine Division of General Motors Corporation, the manufacturer of the brake systems of General Motors vehicles, testified at length concerning the particular cylinder in question and the general theory of the manufacturer and as to the testing of brake cylinders. Mr. Markey’s testimony is voluminous, covering 239 pages of testimony including cross examination. He stated in his opinion the cylinder did not leak before the *315 ^accident. He testified tests on scrapings taken from the right front wheel showed no brake fluid at all on the samplings but ■showed oil or grease or mineral oil. It ■should be pointed out that Mr. Doyle ran ■no scientific tests for brake fluid but merely stated he knew it was brake fluid by ob■servation — looking, feeling, rubbing, smelling and tasting it.
Defendants introduced evidence with regard to James Letney’s activities prior to the accident. Witnesses testified Mr. Let-ney had attended his company’s Christmas party on December 22, arriving at approximately 11:30 P.M. after coming from his job, and when the witnesses left the party at 1:00 A.M. Mr. Letney was still at the party. One witness testified he saw Mr. Letney at 7:30 the following morning December 23, at a cafe in Paterson. Mr. Let-ney ran into a friend by the name of John Dick and his brother-in-law, William Asch-ton, and spent the rest of that afternoon and early evening visiting several bars and cocktail lounges and the record discloses Mr. Letney had more than a few drinks. That evening there was a party at Mr. Dick’s residence where, the evidence shows, Mr. Letney had several more drinks. When Mr. Letney left the party Mrs. Letney stated she would drive, but her husband told her to move over because he was going to drive. In the words of the witness, “he took off spinning gravel like an old French saying, 'like a bat out of hell’ ” throwing gravel that showered Mr. Aschton’s car and stirring up so much dust that he could not see the tail lights of the car leaving. All of this happened just prior to the time of the accident.
As already mentioned, this case was tried before a civil jury and the numerous questions asked of the expert witnesses by members of the jury certainly show an interest on the part of the jury and an awareness of the problem and the issues involved.
 It is clear the plaintiff failed to prove by preponderance of the evidence to the satisfaction of the jury the accident was caused by the alleged defect. It is clear that the issues involved was a factual issue and not one of law, and in such case the findings of fact of the civil jury are entitled to great weight on appeal. In view of the evidence presented by the defendants as to the condition of the driver, Mr. Letney, on the day of the accident, and the fact witnesses testified the brakes were operating properly prior to the accident, and in view of the extensive testimony of the defendants’ witnesses, it cannot be said the verdict of the jury is erroneous. It is apparent the jury was not impressed with plaintiff’s witnesses or with plaintiff’s theory of the case, especially the testimony of Mr. Doyle in regard to his theory as to how the accident happened. It is also apparent the jury felt here as we stated in the case of Cleve T. Smith v. N. O. and Northeastern R. R. Co., La.App., 153 So.2d 533, after considering and weighing the testimony of the experts :
“Our careful consideration of the evidence of record herein convinces us the testimony given by defendants’ experts preponderates in- both quantity and quality over that offered by appellants. The knowledge, skill and experience of defendants’ expert witnesses far outweighs that of plaintiffs’ sole witness, Doyle. Moreover, the explanations given by defendants’ said experts appear well founded and based on sound reasoning. It follows that appellants have failed to bear the burden of proof incumbent upon them and, accordingly, the learned trial court did not err in rejecting appellants’ demands against defendant, General Motors Corporation.”
It is also quite clear the jury must have been influenced by the fact that with the exception of Mr. Doyle’s testimony as to the cause of the accident, corroborated by Mr. Margot, there was no evidence in the record to justify an award for plaintiff, which said view would be in accord with the holding of the Supreme Court in Stevens v. Liberty Mutual Insurance Company, 242 La. 1006, 141 So.2d 346. It is also *316 well established, as we held m that case on rehearing, La.App., 133 So.2d 1, that “[r]e-cent jurisprudence tends to minimize the weight to be accorded so-called expert tests and experiments predicated upon assumptions not necessarily proven or upon variable factors which are not established with reasonable certainty and precision in the particular case involved” and for this Court to reject the findings of the jury in this case would do violence to that principle.
In view of the fact that this Court is in agreement with the verdict of the jury, it will not be necessary to discuss the other issues raised in this case in the pleadings and on appeal.
For the reasons set forth above, the verdict of the jury and the judgment rendered thereon are affirmed
Affirmed.