REID, Judge.
This is an action brought by Clonie May-on against Delta Well Logging Service, Inc. and its insurer, Travelers Insurance Company, seeking recovery for damages in the total amount of $66,000 claimed to have resulted from a collision between his motor scooter and an automobile being driven by Henry Oscorno, an employee of Delta Well Logging Service, Inc. The accident occurred on November 17, 1956 on Federal Avenue in Morgan City, Louisiana, in the Parish of St. Mary, at sometime between 6:30 and 7:00 A.M. The defendants filed an answer in the nature of a general denial and in the alternative specifically pleaded contributory negligence. Maryland Casualty Company intervened as the compensation carrier of the plaintiff’s employer, to which intervention a plea of prescription was maintained by the District Court on February 17, 1960. An appeal was taken to this Court and in the matter of Mayon v. Delta Well Logging Service, Inc., and Travelers Insurance Company, Maryland Casualty Company, Intervenor, La.App., reported 127 So.2d 16, the judgment of the District Court maintaining the plea of prescription was reversed and the case was remanded to the District Court for further proceedings. The case was tried commencing May 15, 1963, and for written reasons assigned the Trial Court rendered judgment on September 16, 1963, in favor of the defendants and against the plaintiff, dismissing plaintiff’s suit at his cost. The judgment was silent as to the dismissal of the intervention. It is from that judgment a devolutive appeal was taken by the plaintiff. The record does not disclose any appeal by the intervenor.
The plaintiff on appeal sets forth two allegations of error: one, the Trial Court erred in failing to find the action of the defendant Delta Well Logging Service, Inc. and its employee, Henry Oscorno, constituted negligence which was the sole and proximate cause of the accident, and two, in the alternative, that the Court erred in failing to apply the doctrine of the last clear chance in favor of the plaintiff.
The undisputed facts are that Federal Avenue in Morgan City is a four lane paved street running generally north and *420 south with double lanes of traffic separated by a wide grassy neutral ground and at the point where the accident occurred the south hound double lane of Federal Avenue in which both vehicles were proceeding is approximately 19 feet wide and is constructed for vehicular traffic to travel abreast of one another.
Plaintiff and defendants have diametrically opposed views as to how the accident occurred. It is the contention of the plaintiff that he was driving his motor scooter in the right hand lane and that Mr. Oscorno was driving a 1955 Chevrolet in the right hand lane and ran into plaintiff’s scooter from behind in overtaking him. It is defendants’ contention that Mr. Oscorno was traveling south in the outer or right hand lane while the plaintiff was in the inner lane and as Mr. Oscorno was passing plaintiff on the right the right handlebar of the scooter made contact with the side of the car, causing Mr. Mayon to lost control of his motor scooter which subsequently fell to the ground, causing plaintiff to fall upon his left shoulder with the scooter lying partially on him.
Plaintiff was the only one who testified that he was in the right hand lane of traffic. The substance of plaintiff’s testimony is to the effect that he was traveling south on his motor scooter in the right or outer lane of traffic on Federal Avenue, that he pulled left to pass a negro boy on a bicycle and after passing the boy he angled back to his right two or three feet when he heard a car slam on brakes. He looked over his shoulder and saw a car being driven by Mr. Oscorno which was in the left hand lane and after he turned his head forward again and within a few seconds his motor scooter was struck on the right rear engine cowling, and he lost control of the scooter which continued for some distance and fell in the middle of the street, approximately ten feet in front of the Oscorno car with the scooter partially on top of plaintiff.
Mr. Oscorno testified that shortly prior to the accident he was proceeding south on Federal Avenue at a speed of approximately 20 miles an hour. He estimated the speed of the scooter at somewhat less than his own or approximately 15 to 19 miles per hour as he was slowly overtaking the scooter. He testified that he had turned southerly from a side street approximately three blocks from the accident onto Federal Avenue and when he first turned onto Federal' Avenue he was in the left or inner lane of traffic. He testified that at all times the plaintiff remained in the left lane, mostly to the extreme left and in fact at times it looked as though he was going into the-neutral ground.
He further testified that while traveling in the outer lane he was about to pass plaintiff when plaintiff moved from the inner side of the left lane to approximately the center of the lane and as the scooter so maneuvered he pulled to his right as far as he could and when his car was abreast of the plaintiff, plaintiff pulled over and ran into the left side of his automobile.
Mr. Oscorno further testified when the handlebar scraped his car the plaintiff’s, scooter tilted away to the left and scraped the roadway for a distance of about five-feet and then the scooter came upright. “He was more or less out of control, but he went straight out in front of me. I’d say approximately in the center of both lanes and the motor scooter came to almost a-stop, and then he just tippled over. And when he tippled over, he fell off to the left side.”
There were two eyewitnesses to the accident. They were Mr. and Mrs. Aucoin who at the time were also driving south on Federal Avenue and who testified they were following plaintiff for about six or eight blocks at a distance of about 200 feet to the rear. Mr. Aucoin testified at all times plaintiff’s motor scooter was on the left side or inner lane while he was in the right lane. He further testified that Mr. Oscorno had overtaken them and after passing them Mr. Osábrno had returned to the ■ right or outer lane, and when Mr. *421 Oscorno was ready to pass the motor scooter it turned into him. Mr. Aucoin’s testimony was definite as to the fact that the motor hike ran into the car and hit the car right at the door and at the time of the impact the car had turned to the right as if to miss the scooter and at the time he stopped he had two wheels off the pavement on the right curbing. He further testified, when asked if he had noticed Mr. Mayon doing any weaving on this motor bike prior to this time: — '“No more than normal — a foot or two of weaving. You don’t hold that straight like to do an automobile.” On cross examination he testified Mr. Oscorno had tried to avoid the accident by cutting his vehicle to the right. Mr. and Mrs. Aucoin took the plaintiff to the hospital following the accident. Mr. Aucoin stated after the accident the plaintiff and a lawyer, not present counsel, came to his house and as they were about to leave plaintiff “did admit looking the driver square in the eye before he fell.”
Mrs. Aucoin’s testimony corroborated that of her husband. She testified the motor scooter was in the left hand lane of traffic and prior to the accident she noticed plaintiff’s motor bike was swaying and just prior to the accident she informed her husband “that man’s going to run into that car if he don’t watch the way he’s swaying”, and she said that was when plaintiff hit the car. She also testified, as her husband did, that subsequent to the accident plaintiff visited them at their home and stated that he had seen the man face to face when he hit the car. On cross examination Mrs. Aucoin testified that for approximately three or four blocks the plaintiff had been weaving from the center of the road to approximately the middle of the left lane and back to the center, but when asked what was the approximate position of plaintiff when the front end of the Chevrolet reached the rear end of the scooter at the time Mr. Oscorno was passing the plaintiff, she said the plaintiff was to the left of the lane a little more toward the neutral ground than to the center and as Mr. Oscorno started to pass the plaintiff was going to the left and he pulled back to the right lane and ran into the Chevrolet.
The other witnesses, Merlin L. Broussard and Fred A. Settoon, were called as witnesses for the plaintiff, but could throw no light on the subject of how the accident occurred. They merely testified they saw a figure hurl from right to left and they thought it was a box. Mr. Broussard did testify that after the accident the plaintiff ended up in the neutral ground.
Mr. Robert J. Hebert appeared as a witness for the defendants. He was an adjuster, who at the time of the accident, was employed by Travelers Insurance Company. He testified it was the policy of the company to send what they called a “C-letter” to the claimants, to which was attached a form called “Claimant’s Report of Accident”, in order to get the view of the claimant as to how the accident happened. The instructions contained in the form letter requested the claimant to submit an estimate of repairs or replacement. Mr. Hebert testified such a C-letter was mailed, properly addressed, to Mr. Mayon, a carbon copy of which was kept by the company. On December 24, 1956, a claimant’s report of accident previously sent to the plaintiff was received by Travelers and attached thereto was an estimate of repairs from Fontenot Chevrolet Company upon which was written: “Repair motor scooter and paint, $37.50.” The report received by Travelers contained the following typewritten information about the accident:
“I was traveling South on Federal Ave. on my Motor scooter at about 18 MPH. i had cut to the left lane to pass a boy on a bicycle and as I attempted to cut back to the right lane of traffic, the other vehicle apparently attempting to pass me on the right side side swiped my vehicle and threw me to the pavement.”
*422 Someone had written the plaintiff’s name and address in ink and there was an “X” on the signature line. Plaintiff denied he had signed the report.
He testified he did not sign his name but made an “X”. He denied the “X” on the claimant’s report was his, stating he did not make a small “x” but rather always signed with a large “X” and so demonstrated to the Court. Plaintiff did admit he obtained an estimate from Fontenot Chevrolet Company in the amount of $37.50, but denied ever seeing the estimate filed in the record, or the claimant’s report to which it was attached. The defendants introduced various documents to disprove plaintiff’s statement that he always signed a big “X”.
In support of his position plaintiff introduced the testimony of Mr. Alvin Doyle, Jr., of Baton Rouge, an automotive consultant. Mr. Doyle examined the motor scooter in question and an automobile similar to the one Mr. Oscorno was driving, taking measurements of the height and width of the parts of these vehicles that would probably come in contact with each other under both the plaintiff’s and defendants’ accounts of the accident and he came to the conclusion that the accident occurred as plaintiff claimed and not as the defendants claimed. He based his opinion on the fact that he found scrape damage on the left engine cowling and indention damage on the right engine cowling which in his opinion indicated the motor scooter had been struck from the right rear in the sideswipe action that forced the side of the motor scooter over to the left. He further testified in his opinion it would have been physically impossible for the scooter to have swerved into the side of the car without leaving obvious marks on the car. The only evidence introduced as to the damage to Mr. Oscorno’s car was his testimony that the handlebar made a mark from the leading edge of the door and extended rearward approximately two feet and actually did not damage the car. Mr. Doyle testified from his measurements the handlebars of the scooter extend 14i/¿ inches out from the center line and the kick starter is 11 inches high and extends 16 inches from the center line, and as the panel below the door of the Chevrolet is 91/5 inches high it is therefore li/¡ inches lower than the starter pedal and as the starter pedal extends farther out than the handlebar the starter pedal would hit the automobile before the handlebar. In answer to a hypothetical question in line with the defendant’s version of the accident, Mr. Doyle stated that if the motor scooter and the automobile were parallel to each other the kick starter would have come in contact with the automobile approximately the same time as the right handlebar and the kick pedal being of harder metal would have caused damage to the automobile and if the closing angle between the motor scooter and the automobile had been such that only the right handlebar of the motor scooter had come into contact with the Chevrolet as alleged by the defendant, then because the automobile is heavier and traveling faster than the motor scooter the handlebar of the scooter would have been deflected to the left and on parting, the right rear of the motor scooter would swerve to the right causing the kick pedal to make a dent at least a quarter of an inch in the rocker panel and the right rear engine cover to cause damages to the quarter panel area.
It should be pointed out that this opinion of Mr. Doyle was based on assumptions as to speed, closing angle, the relative position of the car and the motor scooter, the point of impact, and the condition of the road, none of which factors could have been determined with any degree of accuracy. Mr. Doyle did not examine the motor scooter until January, 1963, over six years after the accident and after the motor scooter had been sold. Although the purchaser testified the damaged area mentioned by Mr. Doyle was present when he *423 bought the scooter and that he attempted to straighten the same, the probability that the damage to the scooter could have been caused in some other manner, cannot be eliminated.
After reviewing all of the evidence, the Trial Court concluded the plaintiff had failed to prove his case.
In regard to the testimony of Mr. Doyle the Trial Judge stated in his reasons for judgment as follows:
“Expert testimony of this nature would be very valuable in the absence of positive testimony of eyewitnesses. But where there are eyewitnesses, as we have in this case, it is not possible to disregard their testimony to accept the theory of an expert. * * * ”
That holding of the Trial Judge is in line with this Court’s holding in the case of Wright v. General Motors Corporation, La.App., 158 So.2d 309, wherein the writer, as the organ of the Court, quoted from this Court’s opinion on rehearing in Stevens v. Liberty Mutual Insurance Company, La.App., 133 So.2d 1, which opinion was affirmed by the Louisiana Supreme Court, 242 La. 1006, 141 So.2d 346:
“* * * that‘[rjecent jurisprudence tends to minimize the weight to be accorded so-called expert tests and experiments predicated upon assumptions not necessarily proven or upon variable factors which are not established with reasonable certainty and precision in the particular case involved’ and for this Court to reject the findings of the jury in this case would do violence to that principle.”
In effect what Mr. Doyle did was to look at a motor scooter six years after an accident and state that certain scratches and dents in the said motor scooter could only have occurred in a certain way. He assumed certain variables such as speed, position of the vehicles immediately prior to and at the time of the accident, the direction and nature of the blow, and concluded the accident must have happened in a certain way — predicated upon assumptions not necessarily proven or upon variable factors not established with reasonable certainty. Certainly in view of the testimony of the eyewitnesses, Mr. and Mrs. Aucoin, who admittedly had no interest in the case, and in view of the balance of the evidence presented at the trial, it cannot be said that the Trial Judge was in error in rejecting the testimony of Mr. Doyle as he did.
Plaintiff argues strenuously the doctrine of last clear chance, basing this contention primarily upon the testimony of Mr. and Mrs. Aucoin and of Mr. Oscorno, the driver of the adverse vehicle, to the effect that plaintiff, Mr. Mayon, was operating his motor scooter in a swaying or weaving motion, and particularly the testimony of Mrs. Aucoin that for some seconds prior to the accident it was evident to her that if Mr. Mayon continued in the manner in which he was driving an accident would occur and therefore the plaintiff had placed himself in a perilous position, of which he was unaware, and that Mr. Oscorno had ample opportunity to discover that Mr. Mayon had placed himself in that position and the opportunity was afforded to him to avoid the accident. In this regard the Trial Judge said:
“The zigzagging of a motor scooter in the left lane of a four-lane highway, that is apparently proceeding in a normal manner, except for the zigzagging, while being overtaken by a motorist in the right lane, does not present a danger to the motorist that would compel him to take emergency measures or be held negligent under the doctrine of the last clear chance. As long as the scooter remains in the left lane and there is no indication that it might cross into the right lane, the motorist in the right lane is entitled to proceed ahead.
“That was the situation in this case until the car came abreast and slightly *424 ahead of the scooter. That was the first time Mr. Mayon crossed the line. There was then nothing Mr. Oscorno could do to keep Mr. Mayon from brushing against the side of his car.
"The last clear chance doctrine does not prevent a motorist from overtaking a motor scooter on a four-lane street just because the scooter is zigzagging in one of the lanes. The motorist is entitled to the use of the other lane until it becomes apparent that if he proceeds he will collide with the scooter, and that occurs only when the scooter crosses into the other lane, or it becomes apparent that it will do so. The scooter gave no such indication here as Mr. Oscorno was approaching. The doctrine is therefore not applicable.”
We are in accord with this finding of the Trial Judge, especially in view of the fact there was no evidence whatsoever to indicate plaintiff at any time in his zigzagging ever crossed the center line into the right hand lane of traffic, nor is there any evidence that the driver of the Chevrolet crossed into the lane of traffic of Mr. Mayon.
There is no question but under our jurisprudence a motorist is justified in assuming that on a four lane highway a vehicle traveling in the same direction will stay in its proper lane and it is permissible to overtake a vehicle on such a highway either from the right or left hand lane.
In the case of Mooney v. American Automobile Insurance Company, La.App., 81 So.2d 625, the defendant bus driver on the inner lane of a four lane road, while being passed by plaintiff’s vehicle in the outer lane, suddenly, without blowing a horn or giving any signal of intention to pass, swerved over to the right into the passing vehicle, causing an accident. In that case this Court quoted from the Trial Court’s reasons for judgment as follows:
“It is my opinion that defendant’s bus had a perfect right to travel in the left traffic lane and at a speed approximately one-half the admitted legal maximum, and that plaintiff’s car had a perfect right to travel in the right traffic lane and at a speed not exceeding the legal maximum. It is further my opinion that defendant’s bus had a perfect right to change over from the. left to the right traffic lane, but that it was incumbent on the driver to see that such change over could be made safely and without any interference with traffic in the right lane. If he was negligent in this respect such negligence was the proximate cause of any resulting damage * *
In addition, the Court quoted with approval 60 C.J.S. Motor Vehicles § 326, at page 762, as follows:
“Where there are distinct lines of traffic proceeding in the same direction, a regulation requiring vehicles to pass to the left of other vehicles proceeding in the same direction applies only to a vehicle which is passing another in its own line, and not to a vehicle in one line which is traveling to the right of another line. On wide boulevards or avenues on which it is customary for cars traveling in the same direction to travel abreast it is not incumbent on a driver, who is traveling well to the right of another car and who has ample room to pass on the right, to turn out to the left in order to pass it.”
See also Marrero et al. v. Richard, La.App., 98 So.2d 305, and Sanders v. Hisaw, La.App., 94 So.2d 486.
It is therefore the opinion of this Court that for the above and foregoing reasons the judgment of the Trial Court is correct and should be affirmed.
Affirmed.