LOTTINGER, Judge.
This is a suit for damages resulting from an automobile collision. The petitioners are Garney H. Cannon, who sues individually and for and on behalf of his minor children, Kathy Cannon, Michael Cannon and Mark Cannon, and Mrs. Garney H. Cannon. The defendants are Alvin F. Loque, Jr., the driver of the vehicle; his employer, Ray’s T. V., Inc.; St. Paul Fire & Marine Insurance Company, the liability insurer of the vehicle and Raymond Stout, who was also alleged to be the owner of the vehicle which Loque was driving at the time of the accident.
The trial below was before a jury which rendered verdicts in favor of petitioners *456 and against defendants, Alvin F. Loque, Jr. and St. Paul Fire and Marine Insurance Company. Raymond Stout was dismissed as a party defendant upon an exception of no cause of action, and Ray’s T. V., Inc. was never served. The verdict of the jury and the judgment of the Court were in favor of petitioners in the following amounts:
Garney H. Cannon, $3,000;/ Mrs. Gar-ney H. Cannon, $4500;/ Kathy Cannon, $1500;/ Michael Cannon; $20,000;/ Mark Cannon, $3,000.
The defendants have appealed alleging the contributory negligence of Mrs. Cannon, who was the driver of the car in which the children were riding, and, in the alternative, alleging error in that the quantum is excessive.
The record discloses that a third party pleading was filed by St. Paul against the Zurich Insurance Company, the liability insurer of the Cannon vehicle, however, this third party demand was also dismissed below.
The record discloses that the accident in question occurred on March 2, 1967, at the intersection of Louisiana Highway 44 and Louisiana Highway 934, in the Parish of Ascension, State of Louisiana.
The facts disclose that Mrs. Cannon was traveling North on Louisiana Highway 44, the favored road, at a speed of approximately 40 to 50 miles per hour. The speed limit on Highway 44 was 60 miles per hour. A van truck driven by Alvin Loque, Jr., owned by Ray’s T. V., Inc. and insured by St. Paul, was at the same time proceeding West on Louisiana Highway 934, which is also called the Bayou Black Road. The speed limit on Bayou Black Road was 60 miles per hour and it is not known how fast the van was going, however, the evidence indicates that it was traveling at a considerable rate of speed. There was a stop sign controlling westbound traffic on Bayou Black Road which was located approximately 93 feet back from the northeast corner of the intersection of Bayou Black Road with Louisiana Highway 44. The van driven by defendant, Loque, made no effort to stop or slow down at the stop sign but proceeded into the intersection. Mrs. Cannon attempted to swerve to the left in an effort to avoid the collision, however, the collision occurred at the center of the intersection. Following the impact, the Cannon vehicle traveled approximately 44 feet and the van approximately 100 feet.
There was a store on the southeast corner of the intersection with a parking lot in front of it, and at times, when cars were parked in the parking lot, westbound traffic on the Bayou Black Road was obstructed from the view of northbound drivers on Louisiana Highway 44. It is contended by St. Paul that Mrs. Cannon was guilty of contributory negligence.
It is now well established that a motorist proceeding on a favored road is not required to look out for traffic on the secondary roads but may rely on the assumption that the other motorist will obey the signal and stop. Stevens v. Liberty Mutual Insurance Company, 242 La. 1006, 141 So.2d 346; Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535; Barrett v. State Farm Mutual Automobile Insurance Co., La.App., 236 So.2d 900, and Drago v. State Farm Mutual Automobile Insurance Co., La.App., 236 So.2d 570.
It is contended by St. Paul, however, that as Mrs. Cannon knew the intersection was a dangerous one, she was con-tributorily negligent.
In Davis v. Aetna Casualty and Surety Company, La.App., 191 So.2d 320, which is one of the cases relied upon by the defendants to support this contention, the Court said:
“Our courts have been reluctant to impose the duty of extraordinary care on the favored motorist without a clear showing that the construction of the in *457 tersection involved justified the placing of an additional burden on today’s already overtaxed motorist.”
Furthermore, in Gautreaux v. Southern Farm Bureau Casualty Company, La.App., 83 So.2d 667, the Court further said:
“In the everyday world, ordinarily prudent motorists on the main thoroughfare do not slow before each corner and attempt to peer down the sidestreets, but instead concentrate most of their attention on the path ahead, relying on their legal ‘right of way’. Legislative provisions for right of way are to facilitate the passage of traffic in this congested twentieth century world. If to accomplish this purpose, and in realization that even observing the path ahead may tax the ordinary motorists’ powers of sustained observation, the legislature has relieved the motorist on the right of way street of a duty ordinarily to slow before each intersection (and, consequently, of a duty to take his attention from the path ahead by darting glances each way down the intersecting streets), appellate courts should not supply artificial standards in an unrealistic attempt to allocate damages after an accident has occurred.”
Clarence Henry, who was riding as a passenger in the Cannon vehicle testified to the effect that the accident occurred so quickly that Mrs. Cannon did not have time to do anything other than what she did between the time that he first saw the approaching van and the collision.
Mrs. Evelyn Banker, who was an eye witness to the accident, testified that she was in her car in a parking lot at the grocery store and was in a better position to see the van than was Mrs. Cannon. Mrs. Banker was unable to testify what she would have done to avoid the accident had she been in Mrs. Cannon’s situation, however, she did testify that when she noticed the van approaching at that speed she knew that he would be unable to stop for the stop sign.
The basic law governing the facts of a controlled intersectional accident, as set forth in Barrett v. State Farm Mutual Automobile Insurance Company (supra) is as follows:
“A person who has the right of way has a right to assume that the traffic approaching an intersection on a less favored street will obey the rules of traffic and stop at a stop sign, and he can indulge in this presumption until he has seen, or should have seen, that the person was not going to comply with the law, and then have an opportunity thereafter to so maneuver his vehicle as to avoid the collision.”
We find nothing in the evidence which indicates that this was an intersection of such a peculiar nature as to take it from within the confines of the basic rule and, accordingly, we find that there was no error on the part of the jury in absolving Mrs. Cannon from any negligence, or contributory negligence.
Our jurisprudence is now firmly established to the effect that much discretion must be left to the Trial Judge or jury in the assessment of damages in torts. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64.
In applying the doctrine as set forth in the above cited cases, the Supreme Court, in Miller v. Thomas, 258 La. 285, 246 So.2d 16, reinstated a $60,000 judgment of the Lower Court which had been reduced by the Appellate Court to $25,000 saying:
“From these decisions, two principles emerge: (1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision; (2) The awards in other cases serve only as an aid in determining whether there has *458 been an abuse of discretion and rivet no steel frame of uniformity.”
The codal provision to which the court referred, is Civil Code Article 1934, Subd. 3, which provides, in part, as follows:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury . . .”
The evidence reflects that Mrs. Dolores Cannon was 30 years of age and in good health at the time of the accident. She was the mother of five children.
As a result of the collision, she was rendered unconscious and taken by ambulance to the hospital where she remained for three days. She sustained two lacerations of the scalp, requiring suturing and multiple and severe contusions to both elbows, both knees, the chest and neck. The contusions were severe enough as to have residual effects for a period of six months following the accident.
Her convalescence was such that nurses and maids were required to attend to her household and children until April 4, 1967. The evidence reflects that Mrs. Cannon worried about the condition of her children and the Trial Judge instructed the jury that they could allow damages not only for pain and suffering but also for mental anguish.
Considering the severity of the injuries sustained by Mrs. Cannon, as well as the evidence to the effect that she was very anxious and worried about her three injured children, we do not feel that the jury abused its discretion in awarding her the sum of $4500.00.
Michael Cannon was 4 years old, with no impairments or disabilities, and apparently in good health prior to the accident. He too was taken by ambulance to the hospital where he remained for three days. Michael sustained a probable linear fracture of the skull, a severe through and through laceration extending the width of his chin, requiring multiple suturing; lacerations to the left forehead one inch by one inch, and left cheek, one inch by three quarter inches, both requiring suturing; multiple scar-rendering cuts to the chin. He required emergency surgery under general anesthetic as testified by Dr. Laville:
“This little boy was in such discomfort that I elected to do him under what is called a general anesthesia, thereby putting him completely asleep.”
As a result of the accident, 9 teeth were either torn from Michael’s mouth or were subsequently removed. He was turned over to Dr. Billy C. Michael, a pedondentist in Baton Rouge, as a result of the lost teeth, Michael’s permanent teeth have erupted abnormally. He has had and will require upper and lower appliances in his mouth. These appliances will have to be replaced by banded braces within four to six years, and the banded braces worn for an additional two years. The record discloses that Michael will require further surgery to his mouth as well as plastic surgery to his face. Additionally, gingival grafts to the lower gums are a possibility.
The evidence reflects that the children at the school which Michael attends have teased him because of the scars to his face which has caused him mental disturbance.
Due to the severity of the wounds to young Michael as well as the disfigurement caused thereby, and the fact that additional surgical procedures will be required in the future, we do not feel that the jury abused its discretion when it awarded young Michael the sum of $20,000 as damages.
No error has been complained of by the defendant as to the awards of $1500 given for the injuries to Kathy Cannon and the award of $3000 given as damages for Mark Cannon’s injuries. The defendants do, however, claim that the award of $3,000 for special damages to Mr. Cannon exceeded by $535 the amount of specials indicated by the evidence. Attorney for petitioner agrees that the amount awarded *459 by the jury is excessive in such amount and, accordingly, the special damages allowed Mr. Cannon should be reduced from the sum of $3,000 to the sum of $2,465.
For the reasons hereinabove assigned, the judgment of the Lower Court will be amended, so as to reduce the award of special damages to Mr. Cannon to the sum of $2,465, and as so amended, the judgment of the Lower Court will be affirmed.
Judgment amended and affirmed.