This is an appeal from a judgment in favor of Henry E. Antoine against Consolidated-Vultee Aircraft Corporation for damages for physical injuries.
The plaintiff was employed by the United States Navy as a civilian aircraft inspector and was assigned to the plant of the defendant corporation to inspect aircraft for defects before delivery to and final acceptance by the Navy. His duties required that he ascend a scaffold-like structure, called an "engine-stand", to reach the higher parts of airplanes. Defendant furnished such structures to be used in making inspections. It was placed in position under the aircraft by defendant's employees. The structure which plaintiff used is a movable, wooden flat-top stand about ten feet square supported by four steel legs about 12 feet in height. An iron ladder is attached to the side of the platform for the purpose of permitting one to easily ascend and descend.
On December 1, 1944, at 1 o'clock, as plaintiff undertook to come down from the top of the platform to the ladder, after making an inspection of certain parts of an airplane, he was injured when the stand swayed, his weight suddenly shifted, and he fell violently to the floor below, sustaining severe physical injuries.
Plaintiff charges defendant with negligence in failing to provide for his use an instrumentality free from vices of construction which could not be ascertained by plaintiff while exercising reasonable care. He alleges negligence in defendant in providing a structure, the legs of which were of different lengths, thereby causing it to sway when he commenced to descend from the top of the platform to the ladder, and in failing to provide the stand with hand holes located in the ladder sides.
Defendant denied any negligence on its part, and, in the alternative, averred that if there was any such negligence, plaintiff's contributory negligence was the proximate cause of the accident. Defendant charges that plaintiff had used the platform or stand or others similar to it over a long period of *Page 436 
time and was thoroughly familiar with the construction of the platform and should have taken care commensurate with his knowledge of such defects and experience in such matters; that plaintiff exercised no care at all and fell because he attempted to come down the ladder in an improper manner considering all then existing conditions; that plaintiff's reckless conduct, with full knowledge of any defects in the platform or stand, constitutes negligence barring recovery; and that plaintiff had used the platform or stand in question, and ones similar to it, on many occasions and had never complained of it being defective, and, therefore, assumed the risk from any defects existing in the construction of the platform.
The record shows that plaintiff was 49 years of age and had worked for the United States Navy since 1942. From October 10, 1944, to the time of his injuries, he worked every day in the plant of defendant corporation as general supervisor of flight inspection with eight or nine men under his supervision. He was a licensed aircraft mechanic, having obtained his license on March 16, 1930, and he had worked on stands of the general type of the one from which he fell for at least eight or nine years. He was therefore an expert.
There were no eyewitnesses to the accident. Plaintiff testified that when he ascended the ladder and pulled himself to the top of the platform by means of the propeller blade, and while he was on the platform for fifteen minutes making the inspection of the airplane, the stand did not rock. He said, however, that, when he attempted to descend, " * * * I got my feet set to come down the run and just as I was about to come down, the stand shifted this way, and my weight went the other way — went back — and when it did I tried to grab something but there wasn't anything there to grab, and I fell down on the ground, from the top of the stand down on the ground."
He admitted that, as he ascended, he did not notice if there were any hand holes, stating that there was no reason in the world to look for them in ascending. He said that most of the stands he had used at defendant's plant were equipped with hand holes and that the only one without hand holes was the one from which he fell. He also admitted that when climbing the ladder his hands would have come into contact first with the top of the ladder at the exact location where the slots or hand holes would have been, had there been any, but he said that he had taken hold of the propeller blade when reaching a certain height, leaning forward, and stepped to the top of the stand. He stated that at the time he started to fall half of his body was above the platform, but that nevertheless he would have been able to grab hand holes in the side of the ladder had they been there, but that he could not grab the side of the ladder nor use the propeller blade, which was three or four feet in the middle of the stand, and cannot be reached when "you get a certain distance down."
Dominick Grisafi, one of plaintiff's witnesses, was also employed by the Navy and assigned to defendant's plant. He testified that twenty minutes after the accident he observed one leg of the stand was a "couple of inches" shorter than the others, but the floor was regular in that particular spot. There was no hand hole in the platform, and this fact was known to him because "you could see when you got on top of the platform that it did not have them." Before the accident and during his employment, he had used the platform several times and it wobbled when he went upon it. Sometimes the ladder would wobble when he was climbing up, and also when he got on top and walked around, it would wobble when he reached a certain point. Sometimes graduated pieces of wood are put under the legs of platforms to even them up when the floors are irregular. Plaintiff, himself, testified that he saw no such blocks around. Grisafi stated that, because the platform wobbled, he took extraordinary care in coming down the platform, when he put his feet on the ladder, to keep from falling.
Moishe Shiff, also an aircraft inspector, saw a lot of people around about fifteen minutes after the accident, and every time they pulled it, the stand went down on one side, so he concluded "one of the legs must have been shorter." He stated hand grips were cut in the platform a couple of hours afterwards, and the defendant put a red tag on the stand, meaning it was not in a safe condition. *Page 437 
Michael Strassel, an employee of defendant, appeared on the scene fifteen or twenty minutes after the accident, and saw that the legs of the stand were uneven and that the stand would wiggle from side to side. He could not tell what caused it to wobble. When he went up the ladder a little himself, it wobbled. The stand had no hand hole, and in coming down "you" had to put your hand down to the lower rung. The unevenness of the floor and the difference in the length of the legs of the stand would make the platform shake or be unsteady. He stated that he wouldn't go up a platform that shook as he started to go up it, that it wouldn't be safe. Sometimes he noticed that platforms were unsteady and reported it to the foreman who ordered him to "fix it".
Henry A. Marchand, an employee of defendant, was familiar with the platform and judged one leg to be two or three inches shorter, but did not make a test.
Defendant's witness, Leo A. Folse, was employed by the company as safety supervisor. He was not present when plaintiff was injured but arrived at the scene five minutes later. He examined the platform and one of the legs was short from four to six inches due, he stated, to "a declivity in the floor." He stated that the platform was standard equipment and wedged blocks to balance them were used, although that particular scaffold did not have one on it at the time. If Antoine had reported the platform, a tag would have been placed on the equipment condemning it until repaired. After the accident, the scaffold was tagged and turn screws placed on the bottom of all legs so that the unevenness of the floor could be made up with the adjusting screw. The platform did not have hand holes and there were perhaps three others that did not have them. The hand holes on those particular platforms were put on the floor of the platform ladder — to afford persons a place to hold on to until they got down on the rung of the ladder — otherwise they could use the uprights of the ladder as hand grips. There were forty-five people in the plant on the Safety Committee during each shift. Folse testified that the notebook which was found where plaintiff fell was three or four inches by five to six inches, and that it was on the floor and not in his pocket when found. Defendant points to this fact as indicating that plaintiff was either writing in or consulting the notebook as he was descending, instead of taking the care necessary to make certain that he would not fall. It appears that Navy employees moved ladders and scaffolds around to suit their own needs at a particular time.
[1] From the record we have no doubt at all that, as that particular platform was placed at that time, it wobbled whenever any one ascended or descended, and we feel certain, therefore, that it wobbled as plaintiff ascended it and that he must have noticed it.
J.J. Rinaldi, defendant's other witness, was a fellow civilian Navy employee of plaintiff. He was working on the side of the plane underneath the stand. He saw the ladder wobble when plaintiff started to climb up, and he also heard it wobble because the stand was made of metal and when it would hit the hangar floor, it would make a noise.
It also appears certain that plaintiff knew that particular ladder was not equipped with hand holes as probably most but not all others were. Plaintiff was a very experienced man in that type of work. On innumerable occasions he had ascended and descended such structures. As we have said, we feel certain that he must have noticed the wobbling as he ascended, and he must also have noticed the absence of hand holes. He might have refused to use such a ladder, or he might have insisted that it be made safe. He did neither, but used it as it was.
If it be assumed that defendant was at fault in furnishing such a defective structure, and defendant seems to concede that it was, nevertheless in using it with knowledge of such obvious defects, plaintiff assumed the risk incident thereto, and he should have taken such additional precautions as were made necessary by those defects.
[2] While it is true that hand holes would have made the use of the ladder easier and safer, it is obvious that had he exercised the proper care, plaintiff could *Page 438 
have held on to the uprights of the ladder and prevented himself from falling.
Counsel for plaintiff insists that the rule which we followed in Gremillion v. American Creosote Works, La. App.,14 So.2d 72, is applicable here, and that he should hold that plaintiff was not guilty of negligence in not taking the necessary precautions to guard against the dangers resulting from the negligence of the defendant. However, in the facts of that case we find a plain distinction from those now under consideration. In the Gremillion case the inspector had been on that particular job for only about a week, and in that week none of the dangers which finally caused the accident had made themselves apparent. We held that during that time nothing had occurred which could indicate to plaintiff that there was any danger, and that he could not be charged with negligence in not guarding against such unknown dangers. Here plaintiff, as we have said, was an experienced man who had many times ascended and descended such ladders and many other similar structures, and he is bound to have known the danger of climbing up and down upon such a structure when it wobbled as this one did.
The facts of the case bring it within the doctrine which we followed in Munson v. Mistretta, La. App., 29 So.2d 402, 403, in which we held that a plasterer experienced "in work requiring the construction and use of scaffolds, knew, or ought to have known, whether the scaffold was safe, regardless of who might have erected it, * * *."
There are many other cases in which it has been held that persons experienced in a particular line of work should be held to be familiar with the dangers which are apparent from obvious defects. We feel that it is unnecessary to cite these cases. The question is whether, under the facts of the case, it should be put into that group in which it has been held that the experience of the particular person is such that he should have realized the dangers of obvious defects and should have guarded against them, or into that other group of cases in which it was held that under the facts, the dangers were not sufficiently obvious to put the person on guard. We think that this case falls into the former category, and we conclude that had plaintiff, with his experience, used the care and taken the precautions which were obviously necessary, the accident would not have occurred, regardless of the defects in the structure.
Accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and plaintiff's suit is dismissed at his cost.
Reversed.