LANDRY, Judge.
Plaintiff herein, Luther F. Swilley, a carpenter, having sustained the loss of his left eye in an accident which occurred in the course of his performing certain repairs to-a residence owned by one C. L. George, instituted this action in tort directly against defendant, American Fire and Casualty Company, to recover damages for said injury, under a policy of liability insurance issued by defendant covering the premises owned by George and upon which plaintiff was working at the time of the mishap.
*158 The gravamen of plaintiff’s complaint is that his injury was caused solely by the alleged negligence of his employer, George, in failing and refusing to provide appellant adequate assistance for the performance of the work undertaken, negligently permitting plaintiff to attempt performance of the work without proper assistance well knowing the hazards resulting therefrom and failing to provide plaintiff with adequate and sufficient equipment and safeguards necessary to protect plaintiff during the performance of the project.
Defendant excepted to plaintiff’s petition as stating no right and no cause of action. The trial court referred defendant’s said exceptions to the merits whereupon defendant answered denying any negligence whatsoever on the part of its insured, George, and, alternatively, pleading contributory negligence on the part of plaintiff. After trial on the merits, the learned trial court found plaintiff guilty of contributory negligence and rendered judgment in favor of defendant dismissing plaintiff’s action.
From this unfavorable judgment of the trial court, plaintiff has taken this appeal alleging error on the part of the trial court in two respects, namely: (1) finding plaintiff guilty of contributory negligence and dismissing and rejecting plaintiff’s demand, and (2) neglecting to render judgment in favor of plaintiff and against defendant in the sum of $250.00 admittedly due appellant under the medical payment clause of the policy in question irrespective of defendant’s tort liability herein, which sum, though tendered appellant prior to suit, was rejected on the ground that the release accompanying defendant’s draft in said amount contained language which appellant interpreted as a full, complete and unrestricted release of plaintiff’s claim in toto.
The parties to the instant litigation are generally in accord as to the events and circumstances attending this matter although there is some disagreement as to the facts as will hereinafter be made to appear.
Defendant’s insured, C. L. George, is the owner of a residence situated at 818 Superior Avenue, Bogalusa, Louisiana. George desired to renovate the residence by removing an existing room therefrom and in its stead building and adding a new and larger room thereto. To accomplish the work intended, George engaged the services of plaintiff, a finished carpenter, and one Alvin Penton, an acquaintance of plaintiff and also a journeyman carpenter. By verbal contract between plaintiff and George it was agreed that plaintiff would perform the work with Penton’s assistance and for his services plaintiff would receive wages of $2.00 per hour. Plaintiff maintains that George agreed to furnish a laborer or carpenter’s helper to assist plaintiff and Pen-ton but on this score his testimony is contradicted by George.
It is undisputed that George is neither a carpenter nor contractor, knows nothing of carpentry and exercised no control over the manner in which the work was performed by plaintiff and Penton. It is conceded, however, that George explained to plaintiff the layout or floor plan of the desired addition and remained on the job almost constantly but solely for the purpose of obtaining such materials and supplies as plaintiff indicated were required or needed in the performance of the work.
According to plaintiff, one Ernest Adams was engaged by George as a carpenter’s helper to assist the two master carpenters by performing all necessary unskilled labor such as carrying materials and supplies, fetching nails and tools for the carpenters and performing all other manual labor required in the execution of the work. George differs with plaintiff on this issue, his testimony being that Adams was not engaged as a carpenter’s helper but merely for the limited purpose of pulling -nails from the old lumber so that it might be used in the reconstruction process and for the additional purpose of stacking material and lumber on the site.
*159 In slightly more than one week plaintiff and Penton assisted by Adams (to the extent hereinafter shown) completed the necessary demolition and advanced the new construction to the stage that the desired addition was completely framed, the ceiling joists and roof rafters were in place and it became necessary to brace the roof. According to plaintiff, bracing is accomplished by cutting pieces of 2 x 4 lumber into lengths sufficient to extend from the rafters (which support the roof decking) to the ceiling joists below. One end of each brace is then nailed to a rafter and the other end is similarly attached to a ceiling j oist below thus forming a vertical support which prevents the roof from sagging. Braces so installed are placed throughout the attic at such points and in numbers sufficient to accomplish the desired result.
Plaintiff testified that at the time of his injury he was in the act of installing a brace consisting of a piece of 2 x 4 approximately six feet in length while standing in the attic on boards placed atop the ceiling joists to afford him a platform upon which to work. He explained that he was attempting to nail one end of the brace to a rafter by reaching up with his left hand and holding the nail against the brace while at the same time attempting to apply sufficient pressure to hold the brace against the rafter and as he struck the nail with his hammer he hit it a glancing blow causing the nail to fly into his left eye inflicting such injury thereto as to eventually require its removal. Plaintiff’s version of the accident is uncon-troverted except in one particular, namely, plaintiff testified that he was standing in the attic on boards placed on top of the ceiling joists whereas, Adams, plaintiff’s witness, testified that plaintiff was standing on top of a stepladder and that he, Adams, was directly below holding and steadying the stepladder for plaintiff.
Plaintiff maintains (and in this regard he is corroborated by the testimony of Penton and Adams) that prior to attempting to nail the brace in question he requested George who was present to provide someone to help him but that George ignored the request and walked away. George admitted being present at the time but denied that plaintiff asked for assistance. In substance, plaintiff contends it was dangerous for him to attempt to nail the braces unassisted as it was difficult to hold the nail and brace at the same time and that plaintiff’s negligence in refusing the requested assistance was the sole proximate cause of plaintiff’s injury.
The record reveals that at the time of the accident plaintiff was 74 years of age and had been engaged in the trade of carpentry for over 40 years. Admittedly, plaintiff was familiar with all phases of frame construction and on innumerable prior occasions had installed braces on similar projects. It is significant that the evidence adduced by plaintiff is confined solely to an attempt to establish George’s negligence in failing and refusing to furnish plaintiff adequate help and assistance to properly and safely perform the work.
At the time of the accident Penton and Adams were within a few feet of plaintiff and, as herein previously shown, Adams stated that he was holding the stepladder on which plaintiff was standing. Plaintiff acknowledges that when he requested assistance, Adams declined on the ground that he, Adams, could not climb and “would not get more than two feet off the floor”. Penton testified he heard plaintiff say words to the effect that plaintiff wished Mr. George would get him some help and he then observed George turn and walk away. Immediately thereafter plaintiff attempted to strike the nail and the accident occurred.
The record shows conclusively that whereas Adams had assisted plaintiff and Penton prior to the accident by handing them material, nails and tools, he had also made it known to plaintiff that he, Adams, would do no work which entailed climbing. Plaintiff concedes that on at least one prior occasion Adams had refused to do work which required climbing up to the ceiling joists.
*160 Learned counsel for appellant has directed our attention to numerous cases in which liability was imposed on the master of a servant injured in the performance of the master’s work due to either a hazard created by the employer, the employer’s failure to take appropriate precaution against a dangerous method of operation, the failure of the employer to provide sufficient persons to safely perform the undertaking or the assignment of dangerous duties to inexperienced personnel. We have considered the cited authorities and find that none are applicable to or decisive of the case at bar.
It is conceded that George engaged plaintiff as the principal carpenter to perform the work and at plaintiff’s suggestion Pen-ton was also employed. It is important to note that the work. in which plaintiff was engaged was the renovation of a private residence being erected by an owner unfamiliar with carpentry work and to further recall that plaintiff who was to perform the work in question was a master carpenter with more than 40 years experience in the trade. Although the record establishes that Adams had previously assisted plaintiff and Penton by handing or giving them materials and bringing them nails and tools, it is not disputed that plaintiff knew, prior to the accident, that Adams would lend him no assistance which would require climbing. From the foregoing we can reasonably ■conclude that if plaintiff were in fact in need of assistance to nail the brace in question, plaintiff well knew that the only possible source thereof was his associate Pen-ton who was present and whose aid plaintiff did not see fit to enlist after Adams had declined assistance. Although plaintiff testified it was not customary for one carpenter to assist another in such a task but rather it was helper’s work, plaintiff well knew that the helper present would not assist him and if, as plaintiff testified, he realized the danger in attempting to perform the work alone, plaintiff should have either requested Penton’s assistance or declined to proceed further until such aid was furnished him iby George.
Accepting plaintiff’s own version of the accident (that he was standing on boards placed on top of the ceiling rafters) by virtue of his experience and realization of the hazard entailed in attempting the task unassisted, we unhesitatingly conclude that there was negligence upon plaintiff’s part to attempt the work in the manner indicated, that is, by holding the nail against the board with one hand and with the same hand attempting to exert sufficient pressure to hold the board against the rafter while at the same time commencing to drive the nail with the other hand. There appears no reason why plaintiff should not have either enlisted Penton’s aid or have first laid the brace down and driven the nail partially into the brace and then have placed it alongside the roof rafter and nailed the brace in position.
If plaintiff were standing on top of a stepladder, as testified by Adams, his negligence is even more patent since a carpenter working on such a footing should exercise more care than would be required if he were standing upon a solid foundation.
We are fully cognizant of and in complete agreement with that line of jurisprudence which holds that an employer who places his employee in a position of undisclosed danger is liable to the employee who is injured thereby. However, we believe said principle inapplicable to the case at bar. The instant case, we believe, falls within the equally well established rule that an employee who exposes himself to a known danger assumes the risk of such exposure and is guilty of contributory negligence if he suffers injury as a result thereof. Also applicable to the case presently before us is the rule that a mature individual performing the ordinary work he was engaged to do, the risks of which are obvious, assumes the risk of the employment and no negligence is imputable to his employer for an accident to- the employee therefrom.
The rule which we consider applicable to the case at bar is well stated in the following language appearing in Spears v. American *161 Fidelity & Casualty Company, La.App., 123 So.2d 513:
“What we have concluded is very well expressed in the case of Moffet v. Koch, 106 La. 371, 31 So. 40. Although a claim by an employee concerned the court in that case and notwithstanding the relationship of employer-employee does not exist in the instant case, we think that the principle which confronts us is analogous to that in the cited case. The Supreme Court, quoting from Kohn v. McNulta, 147 U.S. 238, 13 S. Ct. 298, 37 L.Ed. 150, spoke with reference to the obligation of a normal mature person to see and appreciate dangers which were obvious saying:
“ ‘Where an employé is not placed by an employer in a position of undisclosed danger, but is a mature man, doing the ordinary work which he was engaged to do, and whose risks are obvious to anyone, he assumes the risks of the employment, and no negligence can be imputed to an employer for an accident to him therefrom.’ [106 La. 371, 31 So. 44.]
“See, also, Munson v. Mistretta, La. App., 29 So.2d 402; Kohn v. McNulta, supra; Antoine v. Consolidated-Vultee Aircraft Corporation, La.App., 33 So. 2d 435; Regenbogen v. Southern Shipwrecking Corporation, La.App., 41 So. 2d 110.
“There is an abundance of jurisprudence plainly to the effect that when a person exposes himself to a known danger he assumes the risk and is guilty of contributory negligence if injured. See, New Louisiana Digest, Master and Servant, 111, 123, 152.”
A case analogous to the case at bar is Munson v. Mistretta, La.App., 29 So.2d 402, which involved a claim for damages by an experienced plasterer who was injured in a fall from an allegedly defective scaffold while in the course of performing work upon defendant’s building. Recovery was denied plaintiff therein on the ground that, irrespective of whether defendant erected the scaffold, plaintiff was guilty of contributory negligence in not first ascertaining with certainty that the scaffold was properly erected and safe for use.
We conclude, therefore, that plaintiff was guilty of contributory negligence and that the trial court properly rejected his demand for damages for the injuries sustained.
It is shown that plaintiff has incurred medical expenses in excess of the $250.-00 limit provided for in the policy issued by defendant. Defendant readily concedes that said sum is due plaintiff but contends that tender thereof was made to plaintiff prior to institution of this suit and further maintains that it stands ready to pay said sum and, therefore, no judgment should be rendered in plaintiff’s favor and plaintiff’s demand be rejected at plaintiff’s costs.
With regard to the alleged tender by defendant of the sum of $250.00 admittedly due plaintiff under the medical payment clause of the policy in question, there appears in the record a draft issued by defendant to plaintiff in the sum of $250.00 under date of July 15, 1960. Attached to said draft is a release form which provides in substance that the sum of $250.00 is accepted in full payment and discharge of all liability of defendant under the medical payment coverage of the policy issued to George. Defendant contends that because of this tender no judgment should be rendered against it for said sum which it stands ready and willing to pay plaintiff and consequently, plaintiff’s suit should be dismissed at plaintiff’s costs. In this regard defendant also claims that plaintiff’s suit makes no claim for medical expenses but only for damages for personal injury.
Learned counsel for defendant is mistaken in the contention that plaintiff sets forth no claim for medical payments due. *162 In sub-paragraph 5 of Article XVI of plaintiff’s petition, claim is made for itemized medical expense in the aggregate sum of $1219.47, which said sum constitutes a portion of damages in the total sum of $10,000.-00 claimed by petitioner.
Defendant’s tender by draft of the sum of $250.00 allegedly due under the medical payments provisions does not accord with Article 407 of the Louisiana Code of Practice (in force and effect on the date of the alleged tender), which clearly and expressly provides that a tender of money admittedly due must be made in the presence of two witnesses and in current money of the United States. Defendant’s tender of said amount by draft does not meet the requirements of the aforesaid codal provisions and, therefore, does not relieve defendant of the obligation of the payment of costs as provided for pursuant to Article 155 of the Louisiana Code of Practice. By defendant’s own admission, it clearly owes the sum of $250.00 under the medical payment clause. Failure of defendant to tender same in the manner provided for by law subjects defendant to liability for costs in this suit in which plaintiff seeks recovery thereof.
From the foregoing it follows that plaintiff is entitled to judgment against defendant in the sum of $250.00, together with legal interest thereon from date of judicial demand until paid.
For the reasons hereinabove assigned, the judgment of the trial court dismissing and rejecting plaintiff’s demand is annulled, reversed and set aside and judgment rendered herein in favor of plaintiff, Luther F. Swilley, and against defendant, American Fire & Casualty Company, in the sum of $250.00 together with legal interest thereon at the rate of Five (5%) per cent per annum from date of judicial demand, until paid; all costs of these proceedings are assessed against defendant, American Fire & Casualty Company.
Reversed and rendered.