CHASEZ, Judge.
The plaintiffs, Joseph H. Zambo and Mrs. Dorothy Dupont Zambo, individually' and as natural tutrix of the minor, Carol Ann Hagelberger, sued the defendant, the National Union Insurance Co. of Pittsburgh, Pa. for damages arising out of a collision between a motorcycle being driven by Joseph H. Zambo upon which his minor stepdaughter, Carol Ann Hagelberger, was. d riding as a passenger, and an automobile being operated by Rudolph A. Stratman, the defendant’s insured. The plaintiff’s petition alleged the negligence of Mr. Strat-man.
The defendant in its answer contended that the proximate cause of the accident was Mr. Zambo’s negligence or, alternatively, that he was contributorily negligent. It also filed a third-party petition against Joseph H. Zambo praying for indemnity or contribution for any sums for which it might be held liable to Mrs. Dorothy Du-pont Zambo, individually and as tutrix of Carol Ann Hagelberger.
The collision occurred on the westbound side of Jefferson Highway (U.S. 90) in Jefferson Parish on January 3, 1964. Whether the impact took place in the left-hand or right-hand lane is disputed by the parties. The highway is a four-lane highway, with a neutral ground separating the *332 eastbound from the westbound lanes. Mr. Zambo was executing, or had just executed, a U-turn around a break in the neutral ground in order to head back in a westerly direction, and Mr. Stratman was making a right turn, from Cliff Street, which intersects the highway opposite the neutral ground break, to proceed in a westerly direction, when the impact occurred, involving the right side of the motorcycle and the left front of the automobile bumper.
Both parties were travelling at a slow rate of speed at the time. The motorcycle was turned over, injuring Mr. Zambo and Carol Ann Hagelberger.
The trial judge found “that the collision occurred in the left lane of the roadway. For this reason it concludes that Mr. Strat-man made too wide a turn on entering the highway and struck the motorcycle turning into that lane. Under these circumstance (s) he should have kept his automobile in the right lane of the roadway. This was the proximate cause of the collision.” Accordingly he awarded $7,500.00 for Mr. Zambo’s injuries, plus $1,632.16 in special damages. For Carol Ann’s injuries he awarded $1,500.00, and special damages to her mother, as natural tutrix, in the amount of $345.23.
The defendant has appealed from the judgment below, reiterating the argument that Joseph FI. Zambo was negligent so as to bar his recovery, and asserting that Carol Ann Hagelberger was also guilty of negligence such as to bar her recovery. Further it is argued that the award to Joseph H. Zambo was in itself excessive. The plaintiffs answered the appeal, praying for an increase in the awards for Joseph H. Zam-bo’s and Carol Ann Hagelberger’s injuries.
The defendant asks that we reverse the trial court’s fact finding that it was the negligence of Rudolph Stratman that caused the accident. The defendant maintains that the accident occurred in the right-hand lane. He also argues that Zambo was negligent in making a left-hand turn from the left side of the break in the neutral ground, and was negligent in not paying attention to the oncoming vehicle, instead of looking in an easterly direction as he was making his turn. Further, there is a dispute as to whether Stratman had stopped prior to the collision or whether he ran into Zambo’s motorcycle.
Rudolph Stratman testified that he stopped at the intersection of Cliff St. and Jefferson Highway, started across, and stopped in an angled position with the car protruding in the left-hand lane after seeing Zambo making a turn on the opposite side of the neutral ground, his original intent having been to proceed westerly in the left-hand lane after completing his turn. He stated that Mr. Zambo and his passenger were looking down the highway and the girl was pointing down the highway when making the turn. In his deposition and during the trial Mr. Stratman stated that he told the police he was stopped before the impact occurred.
Mr. Thomas Mizell, an acquaintance of Mr. Stratman who witnessed the accident, was called on behalf of the defendant. He stated that Stratman had stopped at the intersection of Cliff Street and Jefferson Highway and waved at him at his place of work on this corner before proceeding onto the highway, but stopped again “right quick” before he got onto the highway, when the motorcycle bumped into the car very soon after Stratman stopped, the man on the motorcycle having moved about two steps on his foot. This testimony conflicts with the weight of the evidence in the record, Mr. Stratman’s testimony included. Mr. Mizell also testified that the front wheel had cleared the automobile at the time of impact and that the girl was pointing toward New Orleans when the turn was being executed by the motorcycle.
Mr. Zambo testified that he entered the break in the intersection and stopped until traffic cleared. He said he saw an automobile approaching the highway on Cliff St., which he stated appeared to intersect *333 the highway a little below the neutral ground break, and gave it no more than a “passing glance”. He executed a left turn into the left-hand lane when he was struck from behind. He said that he “walked” his motorcycle in executing the turn, that is, using one foot on the ground to help control it at a slow rate of speed. Mr. Zambo stated that Mr. Stratman said to him, “I’m sorry, I’m sorry. I didn’t see you. I was not looking.” immediately after the collision. His evidence was that the motorcycle was struck on the right rear between the saddle-bag and the rear-guard bumper. A rough sketch of the intersection with the location of the impact placed in the left-hand lane was also offered in connection with his testimony.
Carol Ann Hagelberger’s testimony was substantially the same as Mr. Zambo’s. She also stated that the Stratman vehicle did not stop on the highway before it struck the motorcycle. She stated that she had her hand out in response to the question, “Do you recall him (Zambo) indicating in any way that he was intending to make a left hand turn?”
Douglas Michel, the state trooper who investigated the accident also testified. He stated that the car had been backed off the road when he arrived, and that he located what he thought to be the position of the impact in the right-hand lane from the very light debris which was found in that lane. When asked if Mr. Stratman had made any statement to him about the accident, he replied :
A. “Yes. He told me that he was coming on to U.S. 90 in order to make a right turn going West, and that he did not see anything and he just — I believe he stated that the motorcycle came in front of him and he struck it.
Q. Let me see if I understand you. He said he had not seen the motorcycle before the impact ? Is that correct ?
A. No, sir. To the best of my recollection he said he was making a right turn onto Jefferson Highway, and when he was making the right turn the motorcycle came in front of him.
Q. But he did tell you that he had not seen the motorcycle until just before the accident?
A. Yes, to the best of my knowledge.
Q. Did he give you an estimate of his speed at the time of the impact?
A. Yes, sir. I have here (referring to report), Five (S) miles an hour.
Q. Is that the estimated speed that Mr. Stratman told you he was travelling at the impact?
A. Yes, sir.”
Though there was conflicting testimony, the record shows that Mr. Stratman’s vehicle was protruding in the left lane at the time of the collision, in spite of Mizell’s testimony to the contrary, or the fact that the trooper found light debris in the right-hand lane. This much was admitted by Stratman. Moreover, the defendant’s witness, Mizell, did say that the front wheel of the motorcycle had cleared the automobile when the collision occurred. It is clear that the impact occurred on the rear part of the motorcycle. And the res gestae statements made to the trooper by Stratman are significant in that the trooper gave no testimony that Mr. Stratman said he was stopped at the time of the impact. Mr. Stratman asserted that he told the police he was stopped:
“Q. Did you make a statement to the police who investigated the accident?
A. I don’t remember.
Q. Do you remember the State Police asking you how fast you were travel-ling at the time of the accident ?
A. Yes, he did.
*334 Q. He asked you that?
A. The State Policeman did, yes.
Q. What did you answer him?
A. I told him I was NOT MOVING; that I was STOPPED.”
Also Stratman apparently indicated to the trooper that he did not see the motorcycle until just before the impact. Mr. Stratman denied that he had stated to Mr. Zambo that he had not seen him. In his deposition he denied making any statement other than inquiring if he could aid Mr. Zambo or his daughter. Later in the trial he stated that he also had said, “I’m sorry you did not see me.”
Admittedly, this was a close case. But the trial judge had the benefit of observing the witnesses and their demeanor, and he found that Mr. Stratman was negligent. From the foregoing, we cannot say that the evidence was insufficient to support the trial court’s conclusion.
The defendant argues that Mr. Zambo was obligated to ascertain that his turning maneuver could be made in safety before executing it, but this principle would equally apply to Mr. Stratman’s conduct. We think that Zambo could safely assume that the approaching vehicle would not cross over the first lane on a favored highway, while he was making a tight left turn. Further, the fact that he made his turn from the left side of the neutral ground break was not a contributing cause of the accident. Given the other circumstances of Mr. Strat-man’s negligence, the accident would have occurred no matter in what part of the neutral ground break Zambo happened to be located while turning. Any negligence in these respects was not a causal factor.
Authorities cited for the proposition that U-turns are very dangerous maneuvers and extraordinary care is required of the turning driver are not applicable here, as this was not a U-turn in the sense of those cases, that is, a U-turn in the middle of an undivided roadway, as opposed to a turn around a neutral ground break.
Similarly, additional authority cited for the contention that the left-turning party has the burden of showing that he or she was free from fault are not apropos because those cases all involve situations where the turning party sought to turn from a roadway in the face of oncoming or following traffic on the same roadway.
We concur in the trial court’s findings that Mr. Zambo did not cause the accident, which appears to have occurred solely from Mr. Stratman’s inattention and negligent execution of a wide right-hand turn in violation of L.S.A.-R.S. 32:101(1), a section of the Highway Regulations Act.
The defendant also argued that Miss Hagelberger’s failure to warn her stepfather of the oncoming car, which she testified she saw prior to the accident was contributory negligence so as to prevent recovery on her behalf.
Miss ITagelberger testified as follows:
Q. “Describe to us what you saw?
A. As my father was making the left turn, I moved my head to the right in case of oncoming traffic speed-up, and just as the back of the motorcycle was swinging around to go straight I saw this beige car entering on the highway from CLIFF STREET coming towards us on the highway and it never stopped, and then hit us.
Q. What part of the car hit the motorcycle ?
A. The front.
Q. What part of the motorcycle did it hit?
A. The back-end part of the right-rear saddle-bag, and the chrome part right past that in the back.
*335 Q. Where is the right-rear saddle-bag in relation to where you were sitting on the motorcycle?
A. My leg was just right in front of the right-rear saddle-bag. The right-rear saddle-bag was right in back of my leg.
Q. What happened to the motorcycle after the impact?
A. It just fell over.
Q. What happened to you?
A. I was thrown off the motorcycle.
Q. Where did you land?
A. Next to the neutral ground area, facing down.
Q. Can you estimate the speed of the motorcycle at the time of the impact?
A. All I can say is that it was going very slow.
Q. What about the automobile?
A. It was going slow too. I could not judge the speed, I was just watching him coming toward us.
Q. Did you cry out or give any signal when you saw this car?
No, I was too scared.
* * * * *
CROSS EXAMINATION
******
Q. “And you saw Mr. Strat'man’s automobile coming out of CLIFF STREET?
A. No, not then.
Q. WHEN did you see it?
A. I saw Mr. Stratman’s car after my father was finishing his left turn.
Q, Did you see it before it hit the motorcycle ?
A. Yes.
Q. How far away from the motorcycle was it then?
A. I could not say. I was just watching it coming towards us.
Q. You did not touch your father?
A. No, sir.
Did you speak to him? a
No, sir. <:
You did not make any noise at all to indicate there was a car that close to you? a
No. >
After the motorcycle fell over, where were you lying? o
Next to the neutral ground with my right hand touching it.
How far were you from your father? a
When I got up, all I did was turn around and my father was right next to me. <
Would you say he was a FOOT away from you ? a
About One (F) or TWO (2') feet. <j
Did you talk to him at that time? a
A v»c
While we recognize that a passenger would be under a duty to warn the driver of an impending peril which she observes and which may be unknown to the driver under some circumstances, it is unreasonable to expect or require Miss Hagel-berger to warn Mr. Zambo of the danger when the peril was so immediate as to inhibit her response, and it is not shown that any warning could have prevented the accident which was in the immediate offing.
QUANTUM
This court is not disposed to alter the awards in favor of any of the parties. We have examined the record in this re *336 spect and we find that Mr. Zambo incurred substantial injuries to the ligaments of his knee, together with a fracture, resulting in pain and considerable inconvenience, together with residuals existing up to the time of trial and which will continue to exist. The measurement of these elements into monetary terms was in the sound discretion of the trial judge and we cannot say that his determination of $7,500.00 is so out-of-line as being manifestly either too much or too little.
Carol Ann Hagelberger’s injuries were relatively minor. A slow recovery inconvenienced her to a large extent, even to the point of interfering in her education as a nurse. However, complete recovery seems to he within expectations. This award is also affirmed. The special damages allowed to Mr. and Mrs. Zambo for medical expehses incurred, etc. are borne out. by the record. Therefore the judgment appealed from is affirmed; costs are to be paid by the defendant-appellant, National Union Insurance Co.
Affirmed.