CHASEZ, Judge.
This is a suit by plaintiff, Otto A. Kempff, against defendant, B. E. King & Sons, Inc., for personal injuries which Kempff sustained as a result of a fall from scaffolding allegedly owned, constructed and maintained by the defendant. Consolidated with this action is a suit by Kempff for workman’s compensation benefits against Insurance Company of North America, the compensation carrier for plaintiff’s employer Maritime Electric Company. Insurance Company of North America intervened in Kempff’s suit against B. E. King & Sons, Inc. for the amount of medical payments and compensation benefits they had previously paid to the plaintiff. Judgment was rendered in the first suit in favor of plaintiff against B. E. King & Sons, Inc. in the amount of $50,640.00, and in favor of the intervenor, Insurance Company of North America against B. E. King & Sons in the amount of $3,581.24. There was no reference in the judgment to plaintiff’s compensation suit against Insurance Company of North America.
Plaintiff, a journeyman electrician, was employed by Maritime Electric Company, a subsidiary of Fischbach & Moore, Inc., to perform electrical work at the National Aeronautic & Space Administration’s Michoud Facility in New Orleans, La. On October 19, 1964 plaintiff was at work atop a ten foot scaffolding owned and erected at the jobsite by the defendant B. E. King & Sons, Inc. Plaintiff and his fellow employee, Elmer Darwin, had completed their work for the day and were preparing to leave the jobsite when plaintiff stepped on a board atop the scaffolding that was not properly supported which caused him to fall ten feet to the ground. As a result of this fall plaintiff suffered a comminuted fracture to his right ankle.
The trial judge found as a fact, as reflected in his reasons for judgment, and we note ample support in the record for his conclusion, that the deefndant, B. E. King & Sons, Inc. as a fellow subcontractor with plaintiff’s employer, Maritime Electric Company, had agreed with Maritime and with the prime contractor, J. A. Jones Construction Company, to supply the scaffolding needed by all the workers on the jobsite. Under this agreement this scaffolding was to be used freely by all employees on the job, including plaintiff, and defendant agreed to maintain this scaffolding in a safe condition.
Under these facts we find that the provisions of LSA-R.S. 40:1672 are applicable to the defendant as follows:
“§ 1672. Scaffolds, supports, or other mechanical contrivances.
“All scaffolds, hoist cranes, stays, ladders, supports, or other mechanical contrivances erected by any person for use in the erection, repairing, alteration, removing, or painting of any building, bridge, viaduct, or other structure shall be constructed, placed, and operated so as to give proper and adequate protection to any person employed or engaged *924 thereon or passing under or by it, and in such a manner as to prevent the falling of any material that may be used or deposited thereon.”
The intent of this statute is to impose a strict liability on persons who erect scaffolds to properly construct and maintain these devices so that those who use them will be protected from the hazard presented by their defective conditions. Barilleaux v. George D. Mattix, Inc., 202 So.2d 461, La.App. 4 Cir. 1967.
The record reveals that the scaffolding in question was defective to the extent that one end of an outer cross-board upon which the workers were meant to walk was not resting on the support intended for that purpose. The foreman on the job for the defendant who ordinarily made periodic checks to see that the scaffolds were in proper condition could not recall making such an inspection on the day of the accident. In any event there is no evidence that the defect in the scaffolding was imputable in any way to the plaintiff. Under these facts we can find no error in the trial judge’s determination that defendant, B. E. King & Sons. Inc. was guilty of negligence.
The most serious argument urged by the appellant herein is that of contributory negligence. It is appellant’s position that should this court find that appellant was guilty of negligence in the construction or maintenance of the scaffolding in question, the plaintiff should nevertheless be denied recovery because of his own contributory negligence.
In support of its position appellant relies principally upon the cases of Munson v. Mistretta, 29 So.2d 402, La.App.Orl.1947, and Antoine v. Consolidated-Vultee Aircraft Corp., 33 So.2d 435, (Orl.App.1948), which it recognizes are the leading authorities in this area. In particular appellant cites the following language from those cases:
“In his reasons for judgment, the district court said:
‘ * * * We will assume that the scaffold which defendant had erected was used by plaintiff, still the evidence shows that he (plaintiff) examined the scaffold and even nailed a part of the scaffold into the bannister; further that he was a plasterer of twenty-five years experience, very familiar with scaffolds and other equipment used in connection with stucco and plastering work, the kind of work involved herein.
‘The case clearly comes within the pronouncement of the Supreme Court of this State in the case of Moffet v. Koch, 106 La. 371, 31 So. 40, 44, wherein the Court said: “Where an employe is not placed by the employer in a position of undisclosed danger, but is a mature man, doing the ordinary work which he was engaged to do, and whose risks are obvious to anyone, he assumes the risks of the employment, and no negligence can be imputed to an employer for an accident to him therefrom.” Kohn v. McNulta, 147 U.S. 238, 13 S.Ct. 298, 37 L.Ed. 150.’
“We agree with the facts found and with the legal conclusion that there is no liability in defendant since the fall of plaintiff resulted from his own carelessness in not making certain that the scaffold on which he was required to work was suitable and strong enough for the purpose for which he was using it.” Munson v. Mistretta, 29 So.2d at 404.
“The facts of the case bring it within the doctrine which we followed in Munson v. Mistretta, La.App. 29 So.2d 402, 403, in which we held that a plasterer experienced ‘in work requiring the construction and use of scaffolds, knew, or ought to have known, whether the scaffold was safe, regardless of who might have erected it, * *
“There are many other cases in which it has been held that persons experienced in a particular line of work should be held to be familiar with the dangers which are apparent from obvious defects. *925 We feel that it is unnecessary to cite these cases.” Antoine v. Consolidated-Vultee Aircraft Corporation, 33 So.2d at 438.
We have no quarrel with the results reached in those cases insofar as they apply to the circumstances presented in each. We note however that the Court in Antoine recognized an important distinction which must be made in this area, as follows : ....
“The question is whether, under the facts of the case, it should be put into that group in which it has been held that the experience of the particular person is such that he should have realized the dangers of obvious defects and should have guarded against them, or into that other group of cases in which it was held that under the facts, the dangers were not sufficiently obvious to put the person on guard.” Emphasis ours. Antoine v. Consolidated-Vultee Aircraft Corporation, 33 So.2d at 438.
Thus the question herein becomes one of fact, i. e. was the defect in the scaffolding upon which the plaintiff was working one which should have been reasonably apparent to him during the course of his use of the device.
The scaffolding unit consisted of three parallel sections of metal tubing spaced seven feet apart, creating a support 14 feet in length and 10 feet in height, across the top of these tubing supports rested unattached six wooden boards two inches by ten inches by sixteen feet in length placed side by side. The sixth or outside board did not rest completely on the third metal tubing support. This outside board was supported on one end, and in the middle but not on the other end. When plaintiff stepped on this unsupported end it acted like a see-saw causing plaintiff to drop through to the ground beneath.
Elmer Darwin, plaintiff’s co-worker on the job, testified that at the time of the accident he was on the ground looking up toward the plaintiff on the scaffolding. Darwin said that from his vantage point he was able to note that the outside board was not quite resting on the third support when plaintiff put his weight on the board. He called to plaintiff but it was too late. Darwin stated:
“Q. When you looked up at the scaffolding at the moment you saw Mr. .Kempf was approaching to step on it, you say, you said, that the board wasn’t touching, is that what you said?
“A. That’s right.
“Q. How much distance was there between the board and the spot that was there for the board to be resting on?
“A. The board was so close, in fact it was his weight on the board that made me note it wasn’t touching because ordinarily if there hadn’t been any weight on the board from below it was so close to the spot from below I don’t think it could have been noticed.”
Plaintiff himself testified as follows:
“Q. Was there anything that you noticed — did you look at this board when you stepped on it?
“A. Oh, yes, I glanced before I stepped on it; I am going to take a look and — you always look before you step.
“Q. Did you notice anything about that sixth, outer board that might have been out of the ordinary?
“A. No, it looked all right to me, like it was perfectly safe.
“Q What happened when you stepped on the board?
“A. When I stepped on the board it went down; I lost my balance and went to; the ground.”
From this testimony and from the photographs submitted into evidence we are forced to the conclusion that plaintiff as he walked on the scaffold was not in position to note that the sixth board was not supported by the scaffold frame. This condition was one which evidenced itself *926 to those atop the scaffold only when they stepped on the board. Thus we can find no basis for finding the plaintiff con-tributorily negligent in this case.
The plea of contributory negligence is an affirmative defense. LSA-C.C.P. art. 1005. As such the burden was upon the defendant to come forward with evidence to prove that plaintiff was guilty of specific acts of negligence causing his injury. However, we note the record before us is singularly absent of any such evidence; to the contrary, as we have stated above, the facts as adduced preponderate to the opposite conclusion.
At this point we reach the issue of quantum. Appellant contends that the award of $35,000.00 to plaintiff for his pain, suffering and permanent partial disability are excessive and constituted clear abuse of discretion by the trial judge.
As a result of the accident plaintiff suffered a severe, comminuted fracture of the distal end of the right tibia with marked displacement of the bone fragments. After receiving emergency treatment at Touro Infirmary on the day of the accident, October 19, 1964, where his leg was manipulated and a long leg plaster cast was applied, he was referred to Doctor Rufus H. Alldredge, an orthopedic surgeon. On October 20th Dr. Alldredge performed a second closed reduction manipulation procedure on the plaintiff. It was discovered the next day however that the alignment of the main fracture fragment had not been maintained as it had been hoped, and an open reduction procedure was necessitated. This open reduction procedure was performed on October 24th. The bone fragments were fixed in place with screws and the incision was then closed and another long leg plaster cast was applied. Plaintiff remained in the hospital until November 16, 1964. During his hospital stay plaintiff ran fever from an unknown cause. He developed a generalized skin rash which was treated with antihistamine drugs. In addition he developed definite pain symptoms in his chest which were also unexplained. Plaintiff was seen by Dr. Alldredge in the Doctor’s office some fifteen times from the time of plaintiff’s discharge from the hospital, until September 27, 1965. During this time the long leg plaster cast was changed to a shorter boot cast, which was finally removed March 24, 1965. On May 20, 1965 plaintiff was readmitted to the hospital for two days for removal of the screws from his ankle. He was finally discharged by Doctor Alldredge on September 27, 1965. Doctor Alldredge testified that as a result of this injury plaintiff has suffered a 25!% permanent partial disability of his right foot and ankle. The Doctor stated it was his opinion plaintiff will always suffer pain and discomfort from his injury.
Plaintiff was seen by Dr. George Bat-talora, also an orthopedic specialist in March 1966. Dr. Battalora’s statements concerning the severity of plaintiff’s injury coincided closely with those of Dr. All-dredge. Dr. Battalora however was of the opinion that plaintiff would be left with a 40% loss of the use of his right foot.
 We are fully aware of the much discretion allowed the trial judge in assessing the amount of damages to be awarded for personal injuries. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127. However an award of $35,000.00 under the facts of this case reveals a clear abuse of this discretion and we are constrained to lower this amount to $25,000.00. We are particularly impressed with the recent decisions in Freeman v. Liberty Mutual Insurance Company, 175 So.2d 659, La.App. 1 Cir. 1965 and Christ v. State, through Department of Highways, 161 So.2d 322, La.App. 3 Cir. 1964, in which similar and more serious injuries were compensated by $22,500.00 and $20,000.00 awards respectively. We have considered these cases only insofar as they are relevant to the question of the much discretion discussed above.
Appellant also complains of the $10,000.00 award to plaintiff for loss of future wages.
*927 The record reveals that as of the time of his accident plaintiff was employed as a journeyman electrician at an hourly rate of pay of $4.40. He was then 49 years of age. Since the accident plaintiff did go back to work for his old employer at the same hourly rate of pay, though he was physically able to do only supervisory or control work because of his disability. He was still working for the firm even up to the date of trial.
Plaintiff testified that because of his disability he will not be able to accept certain jobs which normally would be open to a union worker with his degree of proficiency in his skill as an electrician. He stated that although he had been fortunate to date in that his old employer had been able to find jobs for him, he could not expect this situation to continue. Apparently it is based on this reasoning the trial judge awarded plaintiff $10,000.00 for loss of future wages.
The basic principle in awarding damages for loss of future wages is that a plaintiff must prove this loss with reasonable certainty and speculation and conjecture cannot form the basis for this award. We find that under the facts as presented here, where plaintiff has continued to earn the same rate of pay since his return to work that he earned prior to his injury and he has lost no time from work, an award for loss of future wages is just too speculative for us to affirm. Indeed there is no substantial indication that plaintiff will be forced to miss any work in the future, though he will not necessarily be performing the same duties he performed prior to his injury. We must note that this is not a workman’s compensation situation where the test to be applied is whether or not plaintiff can do work of a reasonable character with that he was doing prior to his injury. Rather this is an action in tort where the plaintiff to be awarded a sum for loss of future wages, must prove that he will actually lose in the future by reason of his injury. Freeman v. Liberty Mutual Insurance Company, supra.
The intervenor in plaintiff’s suit against B. E. King & Sons, Inc., Insurance Company of North America, has answered this appeal with a plea for an award of legal interest on the $3,581.24 sum awarded it against appellant, which sum represented the amount paid by it to plaintiff as workman’s compensation benefits and medical fees.
We find that the intervenor was entitled to this legal interest on the award and the failure to grant it was evidently just an oversight by the trial court in the preparation of its judgment.
For the reasons assigned the judgment of the trial judge is amended to reduce the amount awarded to plaintiff, Otto A. Kempff against defendant B. E. King & Sons, Inc., from $50,640.00 to $30,640.00 and to grant intervenor, Insurance Company of North America, legal interest on its award of $3,581.24 against B. E. King & Sons, Inc.; and as thus amended the judgment is affirmed.
Amended, and as amended, affirmed.