LANDRY, Judge.
Defendants appeal a solidary jury verdict awarded plaintiff in the amount of $59,000.-00 for personal injuries and damages sustained in an accident in which plaintiff was struck by a pick-up truck and received injuries to his right knee. Negligence of the truck driver, Townsend, is conceded. The issues before this court are (1) the alleged contributory negligence of plaintiff, and (2) the reputed excessiveness of the award. We find the award excessive and reduce it as hereinafter noted.
The accident in question occurred during the afternoon of December 12, 1966, on 7th Avenue within the confines of the Humble Refinery Plant, Baton Rouge, Louisiana. Plaintiff, a pipefitter employed by Nichols Construction Company, was struck by a pick-up truck being driven by defendant B. E. Townsend during the course and within the scope of his employment by defendant B & B Engineering and Supply Company. Plaintiff was standing in the street (which runs in an easterly-westerly direction) next to a mobile crane parked along the south side of the street and being operated by Horace J. Legier, another Nichols employee. Meanwhile, Townsend, accompanied by a fellow worker, Cosimo E. Martello, drove his truck past the crane and pulled up at the north curb of 7th Avenue a few feet west of the spot where plaintiff was standing. Townsend then proceeded to back his vehicle toward the south curb. In so doing, he struck plaintiff who was standing in the street with his back to Townsend’s vehicle directing the movement of the crane.
Plaintiff testified that as the truck passed going westerly, he remained very close to the crane. When the truck passed, he noted it stopped about 25 feet west of the crane and alongside the north curb of the street. After checking the truck’s position, he stepped back about three paces to direct the crane operator and then was struck on his right knee.
Legier’s testimony confirms that of plaintiff regarding the position of the truck when Townsend commenced backing the vehicle. He also stated that after seeing the truck stop at the curb, he did not again see that vehicle until it was about to strike plaintiff. He further stated he yelled to alert plaintiff but was too late to avoid the accident.
Townsend’s testimony is that he observed plaintiff standing near the crane as Townsend passed and came to a stop about 6 feet west of the crane and alongside the north curb of the street. He was aware the area *379 was teeming with workmen engaged in various phases of the “turn around” operation. According to Townsend, the bed of his truck was loaded with boxes which completely blocked his view through the interior rear view mirror and rear window of the truck. Therefore, he utilized the outside mirror on the driver’s side of the truck but was unable to see plaintiff. He further stated that when he commenced backing, Martello had gotten out of the truck.
In essence Martello testified he was in the truck looking out the back window'which was obscured. He also stated that he warned Townsend of plaintiff’s presence behind the truck but not in time to avoid the accident. In this respect Martello is corroborated by Legier who stated that he could clearly see both Townsend and Martello inside the truck through the rear window of that vehicle.
Townsend’s negligence is conceded It is strenuously urged, however, that Courville was contributorily negligent in standing in the street with his back to a vehicle which he knew to be nearby. Appellants cite numerous authorities to the effect that a pedestrian in the street must maintain a sharp lookout for vehicles and is legally charged with seeing what he should or could have seen in the exercise of reasonable care. Appellants particularly rely on Burnett v. Marchand, La.App., 186 So.2d 383; Glatt v. Hinton, La.App., 205 So.2d 91, writ refused, 251 La. 861, 206 So.2d 712; Baker v. Hartford Accident and Indemnity Company, La.App., 136 So.2d 828.
The rule relied upon applies to public streets, and not to the facts and circumstances of this case. While the “street” on which this accident occurred is known as 7th Street, the area in question is privately owned and constitutes part of a huge modern oil refinery. The “street” is an extension on private property of a public thoroughfare. The record is clear that within the refinery, the street is not open to or available for public use.
Under the circumstances, we find no negligence on plaintiff’s part. To direct the movement of the crane, it was necessary that plaintiff face its operator so that proper signals could be given. It was also necessary that plaintiff proceed into the “street”. Plaintiff took adequate precaution when he observed the truck to the point that it was parked at the curb. He had a right to rely on the assumption the driver of that vehicle was aware of his presence and would make proper observation before moving the truck from the curb. Under the circumstances, a high degree of care rested on those moving vehicles or machinery as attested by. Townsend that “Usually in them kind of places you have got to go mighty slow.”
We next consider whether the award of $59,000.00 damages was excessive. The jury did not itemize its award so we must speculate to some extent regarding the elements thereof.
Plaintiff was taken immediately to Dr. A. K. Mclnnis who discovered contusions of the right knee and took X-rays which which disclosed no bone pathology. Dr. Mclnnis sent plaintiff home but plaintiff returned on January 26, 1967 complaining of continued discomfort in the injured joint. Dr. Mclnnis then referred plaintiff to Dr. Willard J. Dowell, Orthopedic Specialist.
Dr. Dowell saw plaintiff on February 21, 1967. He diagnosed plaintiff’s condition as torn cartilage or meniscus involving the back half of the outer or lateral cartilage of the knee. Plaintiff continued to work until March 21, 1967, on which date the damaged cartilage was surgically removed. Following the operation plaintiff’s knee swelled and plaintiff was in considerable pain for two or three days. Plaintiff remained hospitalized nine days during which time fluid was drained from the knee. Following release from the hospital, plaintiff was administered extensive physiotherapy to strengthen the knee and rebuild his right thigh which was visibly atrophied from nonuse. In mid-May plaintiff’s knee *380 was again drained and injected with cortisone. Another injection was given on July 24, 1967, to relieve plaintiff’s pain. The injured limb failed to respond to treatment thus necessitating a second operation which was performed September IS, 1967. On this occasion adhesions were excised, a small flake of articular cartilage was removed, and a minimal or slight roughening of the patella was corrected. Plaintiff recovered more rapidly and less painfully from this latter surgery than from the first. Physio-therapy treatments were resumed. At the time of trial in September, 1968, Dr. Dowell noted plaintiff was still suffering 20-25% disability of his right leg, which condition the doctor felt would improve very little, if at all. At this time Dr. Dowell also noted the persistence of pain and noticeable atrophy to plaintiff’s right thigh. In Dr. Dowell’s opinion, plaintiff was physically unable to perform all of the strenuous aspects of his trade as a pipefitter.
Dr. Harry D. Morris examined plaintiff in a consultant capacity on June 18, 1968. He assessed plaintiff’s disability at 10% of the right leg as a whole and recommended continued physio-therapy. Neither Dr. Dowell nor Dr. Morris could explain plaintiff’s complaints of continued pain but neither doubted the sincerity of the complaints.
It is stipulated plaintiff was incapacitated and received workmen’s compensation benefits for 32 weeks following his injury. It is shown that since resuming employment in late October, 1967, plaintiff, though unable to perform as a pipefitter, has been engaged as a materialman receiving union scale wages paid able-bodied pipefitters. It is also shown that the few available jobs of this nature are parceled out among pipe-fitters as a matter of union policy. Additionally, plaintiff attempted several jobs related to pipefitting but found he could not satisfactorily perform the work and resigned each time.
Albert L. Durbin, business agent of plaintiff’s local, testified the union scale for pipefitters was $4.40 hourly until April, 1967; $4.80 between April 1 and October 1, 1967, and $5.00 after the latter date. The agent also testified that before plaintiff’s injury, plaintiff was employed as a pipefitter but subsequent thereto plaintiff’s employment has been solely that of a materialman. Mr. Durbin also stated it was extremely doubtful that a man with plaintiff’s physical disability could procure work as a pipefitter because of the climbing and heavy lifting involved in the ordinary course of things.
We note evidence showing plaintiff’s income tax returns show earnings of $13,329.-64 in 1966 but only $6,675.72 in 1967. We further observe that the 1967 wages were earned in a 20 week period inasmuch as plaintiff was disabled 32 weeks during that calendar year.
In assessing recoverable damages we must consider stipulated compensation benefits in the sum of $1,120.00 paid by Fireman’s Fund American Insurance Company, compensation insurer of plaintiff’s employer. We must also consider stipulated medical expense in the amount of $1,882.75.
Plaintiff is also entitled to recover wages lost during his 32 weeks of disability which commenced March 20, 1967, the day on which plaintiff entered the hospital for his first operation which was performed the following day. Since plaintiff was disabled for 32 weeks as per the stipulation of record, we conclude he resumed employment on October 30, 1967. There is no proof in the record that prior to March 20, 1967, plaintiff worked more than 40 hours weekly. We recall the prevailing pipefitter wage was $4.40 per hour until April 1, 1967; $4.80 per hour between April 1 and October 1, 1967, and $5.00 after October 1, 1967. It follows that plaintiff lost 10 (8 hour) days employment in March, 1967, at $4.40 per hour; 130 (8 hour) days at $4.80 hourly between April 1 and October 1, 1967, and twenty (8 hour) days *381 in October, 1967, at $5.00 hourly, or total wages of $6,144.00 during the interval March 20, and October 30, 1967. Plaintiff is entitled to recover lost wages and medical expense in the aggregate of $8,026.75. Deducting this sum from the $59,000.00 awarded by the jury, we determine plaintiff was granted $50,973.25 for past and future pain and suffering and loss of future earnings.
Appellants argue in effect that, assuming liability on their part, plaintiff’s total recovery should be limited to the sum of $15,-000-$16,000. Appellants maintain that special damages in the sum of approximately $6,000-$8,000 and a similar amount for pain and suffering would amply compensate plaintiff for all injuries and losses. In so arguing, appellants rely upon Weir v. Williams, La.App., 158 So.2d 376; Beauregard v. Salmon, La.App., 205 So.2d 634; Zambo v. National Union Ins. Co. of Pittsburgh, Pa., La.App., 196 So.2d 330; Wall v. Windmann, La.App., 142 So.2d 537; Callais v. Furniture Showrooms, Inc., La.App., 213 So.2d 537; Ford v. City of Shreveport, La.App., 165 So.2d 325; Stevens v. Liberty Mutual Insurance Company, La.App., 133 So.2d 1; Dupuy v. Southern Farm Bureau Casualty Ins. Co., La.App., 212 So.2d 484. Appellants also contend on authority of Kempff v. B. E. King & Sons, Inc., La.App., 222 So.2d 921, plaintiff is entitled to no award whatsoever for loss of future earnings.
We agree with appellants that an award of $50,973.25 to plaintiff herein for pain, suffering and loss of future earnings is grossly excessive and an abusive exercise of the jury’s authority in such matters.
The circumstances considered, however, we are of the opinion that an award of $15,000.00 to plaintiff for past and future pain and suffering is in order. Admittedly, the sum allotted exceeds the awards made in Weir, Beauregard, Zambo, Wall, Callais, Ford, Stevens and Dupuy, above. However, assessment of damages for pain and suffering is largely within the discretion of the court. Nickens v. McGehee, La.App., 184 So.2d 271. Plaintiff has undergone two major surgical operations. Both procedures were followed by long periods of recuperation resulting in considerable pain and suffering. In addition, extended therapy was required including aspirations of the knee and injections of cortisone. It is shown that plaintiff’s knee will be a source of future pain and discomfort. We find that the amount awarded for this element of damages will do substantial justice between the parties.
We believe the case at bar is distinguishable from Kempff, above, as regards plaintiff’s right to recover for loss of future earnings. Since plaintiff resumed work in late October, 1967, he attempted on two or three occasions to work as a pipefitter but could not do so because of the condition of his knee. In the eleven month period preceding the trial below, plaintiff has been steadily employed as a “materialman” at wages equivalent to those of a full time pipefitter. As materialman his duties are tantamount to those of a stock clerk. It is shown that his work consists solely of passing out pipe, fittings, • and other supplies required by pipefitters in the course of their work. We deem it significant that plaintiff is permanently disabled from doing the full work of a pipefitter. It is also significant that plaintiff has only a fifth grade education.
Mr. Durbin’s testimony makes it clear that there is no assurance as to how long plaintiff can be retained in a materialman’s job as pipefitter wages. Durbin explained that there are very few materialman’s jobs available and such positions are customarily reserved for disabled men much older than plaintiff.
While plaintiff demonstrated no loss of earnings to the date of trial, he has no assurance regarding continuation of this fortuitous circumstance noted. We have here a tradesman who is not employed in his former trade, neither is he employable as such. We believe that plaintiff will un *382 questionably suffer loss of future income because of his inability to ever again work as a pipefitter. In so concluding, we do not award a loss of future earnings on the workmen’s compensation theory that inability to perform one’s former duties entitles the employee to recover benefits even though he may be employable in some other capacity at wages exceeding those received at the time of injury. We base recovery of lost wages in this instance solely on the fact that plaintiff can no longer earn wages as a pipefitter and cannot reasonably anticipate continued employment in his present, or any other unskilled capacity at pipefitter wages.
An award for loss of future earnings cannot be made on any scientific basis; neither can it be determined with mathematical certainty. However, where it appears reasonably certain and probable that a loss of earning capacity will be experienced, the courts will exercise a sound discretion and award such recovery therefor as appears just and fair to both litigants under the circumstances. Kezerle v. Hardware Mutual Casualty Company, La.App., 198 So.2d 119; Stevens v. Liberty Mutual Insurance Company, La.App., 133 So.2d 1, affirmed 242 La. 1006, 141 So.2d 346. We deem an award of $15,000.00 for loss of future earnings will do justice between the litigants at bar.
In its supplemental brief, defendants-appellants alternatively contend plaintiff’s loss of future earnings should be limited to the sum of $5,000.00. This position is based on the circumstance that Paragraph 12 of plaintiff’s petition, which specifies damages sustained, claims loss of future earning in the sum of $5,000.00
We note, however, in addition Paragraph 12 also lists a claim in the sum of $50,000.-00 for permanent disability, past, present and future, resulting from the injuries to plaintiff’s right leg and knee,,
LSA-C.C.P. Article 865 declares:
“Every pleading shall be so construed as to do substantial justice.”
This court declared in Boudreaux v. Allstate Finance Corporation, La.App., 217 So.2d 439:
“It is settled law that modern tendency is toward a liberal construction of pleadings since technical rules of pleading no longer obtain, the result being that all doubt be resolved in favor of the pleader to the end that substantial justice be achieved. LSA-C.C.P. Articles 854, 865; Cuccia v. Pratt Farnsworth, Inc., La.App., 155 So.2d 41.”
We therefore conclude that the claim for $50,000.00 can be construed in no other way than as a claim for future lost wages thereby establishing a total claim on behalf of plaintiff-appellee for $55,000.00 for loss of future earnings. Our award for $15,000.00 for future lost earnings is therefore in accord with the pleadings.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Frank M. Courville, and against defendants, B & B Engineering and Supply Company, Inc., the Travelers Insurance Company, and B. E. Townsend, in solido, be and the same is hereby reduced to the sum of $38,026.75.
It is further ordered, adjudged and decreed that the judgment in favor of intervenor, Fireman’s Fund American Insurance Company (compensation insurer of Nichols Construction Company) against plaintiff and defendants in the sum of $3,-002.75, for medical expense and compensation payments made to plaintiff Courville, be and the same is affirmed, costs of this appeal to be paid by defendants.
In all other respects the judgment of the trial court is affirmed.
Amended and affirmed.